In the Matter of the Estate of MAE P. FISCHER, Deceased.

Surrogate's Court, New York County, March 21, 1934.

*O'Brien, Driscoll & Raftery,* for the petitioner George A. Platto.

*Milton E. Mermelstein,* petitioner for ancillary letters of administration.

*H. Randolph Guggenheimer,* for the committee of Frederick G. Fischer, incompetent.

DELEHANTY, S. The issue involved is one of domicile. The decision of that issue will determine who are interested in the estate. Deceased left her surviving no descendants and no blood relative closer than a brother, who is applicant for original letters of administration in this jurisdiction. She left surviving her also a husband who sometime after her death was committed to an institution pursuant to the provisions of the Mental Hygiene Law. Opposition to the brother's application is made by the committee of the husband's property and also by an administrator of the estate of deceased appointed in New Jersey who has separately applied here for ancillary letters of administration. The brother's application for original letters has been consolidated with the application for ancillary letters.

The law of the State of New Jersey differs from that of New York in respect of the descent and distribution of real and personal property. Under the law of New Jersey, the husband of deceased has become vested with the real property of deceased in that State. If deceased was at her death domiciled in the State of New Jersey, the surviving husband is her sole distributee. If at her death she was domiciled in New York, the husband's participation in her estate here is limited to the first $10,000, plus one-half of the remainder. The estate exceeds $10,000 in value and so the fact of domicile must be ascertained in order to determine who is entitled to letters.

Deceased was an elderly woman. She married Frederick G. Fischer in 1930. He was her third husband. She was his third wife. She inherited substantial property from at least one of her former husbands and there is proof in the record that she had been well-to-do and that her resources were drawn upon largely, if not wholly, to maintain the household after her marriage to Mr. Fischer. She appears to have been a resident of New York for the greater part of her life. While the record is silent as to much of her early life it is clear that in her later years she lived wholly in New York city except for periods when she traveled — always returning to New York city. Up to the time of her death she had her jewels in a safe deposit box in New York city. She had her securities in custody

of a bank in New York city. Her money was in a bank in New York city. Her friends were in and about New York city.

Mr. Fischer was born in New York State sixty-two years ago. He is now an inmate of an institution in New York State to which he was committed by the Supreme Court of New York county. He practiced law in New York State from the time he was admitted to practice by New York courts until his commitment. He actually lived in New York all his life except for the periods hereafter discussed. He had no business outside New York State so far as this record shows. He owned no property outside New York State. His mother, with whom he lived at times, resides in New York. His former wives are buried in New York. He married his third wife, the deceased, in New York and established their matrimonial domicile in New York. His children and their families are residents of New York.

On this record, if nothing contrary was presented, there could exist no doubt that deceased and her husband were domiciled in New York, but it is urged that a New Jersey domicile has been established by reason of transactions which are herein detailed. In the summer of 1931 deceased (not her husband) leased for summer occupancy a bungalow at Denville, N. J. In the fall of 1931 she bought the bungalow and took title to it by deed reciting her address as New York. She then was living at East Ninety-fourth street, New York city, with her husband. Sometime later in the same year she purchased by similar deed contiguous property and enlarged her plot. Sometime in 1932 she did a substantial amount of fill which changed the swampy character of the property to that of a level graded lawn. In 1933 she initiated further work on the property. The building was a one-story wooden structure with interior partitions lined with wallboard. Originally it had no cellar. The structure was raised in 1933 to permit the construction of one. Apparently the water level was so close to the surface as to require this cellar to be largely above ground. She discussed with a heating contractor the terms on which heating apparatus would be installed. She never closed any contract for this. She did not complete the cellar work. The contractor was somewhat uncertain of his contract price and delayed the work for this reason and because also of deceased's illness.

In September, 1932, the lease of the Ninety-fourth street apartment occupied by the Fischers terminated. The household furniture in the apartment was moved to the dwelling at Denville. Thereafter, no household furnished by the property either of deceased or of her husband was maintained by them in New York State. After the thirtieth of September, when their lease expired

on the Ninety-fourth street apartment, the couple moved to a hotel in New York city. Mr. Fischer became ill. The hotel accommodations were apparently felt to be inadequate and the couple leased till May 1, 1933, a furnished apartment in a city suburb. The husband's illness required a surgical operation and he went to a hospital for treatment. When sufficiently recovered he was moved by motor from the hospital to Denville and about July 15, 1933, deceased went out there also. In the interval she lived with a woman friend in New York. She died in Denville August 21, 1933.

When Mrs. Fischer died the arrangements for her burial required the filling out of data for a death certificate. In it the address of Mr. Fischer was given as Hotel Wellington, New York city. Denville, N. J., was referred to as the summer home. There is question as to who originated these addresses but there is no question that the certificate when filled out was signed by Mr. Fischer. The local health official was visited by Mr. Fischer and to him Mr. Fischer said that he was not again coming to his summer home but was thinking of giving it to the children. The hotel given as the address of Mr. Fischer in the certificate signed by him is the same hotel to which the couple moved from Ninety-fourth street when the lease of that apartment expired. Apparently Mr. Fischer did not go to that hotel after the death of his wife. He first went for a night to his daughter's summer home in Connecticut. Then he registered at the St. Regis Hotel in New York city for two days. The registry card in an unidentified handwriting there gives his address as Denville, N. J. Then he went to the New York Athletic Club, where he remained for twenty-two days. Then he went to the Waldorf-Astoria, where he remained until he was committed to the institution.

Meantime, and on August 25, 1933, Mr. Fischer applied to the Surrogate's Court of New York county for an order permitting the opening of the safe deposit box of deceased. This application was made on an affidavit signed by Mr. Fischer giving his residence as East Ninety-fourth street, New York city.

It is shown beyond doubt that sometime soon after August 25, 1933, when this application was made to this court representing deceased as resident of this county, Mr. Fischer learned that he could take the entire estate of his deceased wife if she were domiciled in New Jersey. After learning that fact, he sought to induce the attorney who had drawn the affidavit in which he stated that his wife resided in New York to make an affidavit stating that the New York address had been used " inadvertently." There can be no doubt that this was an attempt by Mr. Fischer to alter the record

for the purpose of securing his wife's entire estate for himself. The inference flowing from such attempt is obvious.

A son-in-law of Mr. Fischer was a witness. He had given considerable information to the physicians who examined Mr. Fischer prior to his commitment. Before the text of his statements to the physicians was developed on his cross-examination this witness painted a picture of the relations between this elderly couple little short of idyllic. His testimony on direct examination would convey the idea that the entire intent and thought of deceased and her husband was to make this bungalow at Denville a permanent home to which, especially on holidays, the entire family group would resort. On his cross-examination it developed, however, that to his knowledge Mrs. Fischer had herself furnished all the money spent on the property, that Mr. Fischer had no resources except such as he would derive from the estate of his wife, that controversy and threats of divorce were the standard and not the exceptional declarations passing between them, and that deceased had asserted specifically that she would wait only until Mr. Fischer had recovered his health to initiate an action of divorce against him. Lack of frankness and biased recital of acts and statements which might bear two interpretations are not singular to this witness.

A Mrs. Garrison, who believed she was entitled to participate in decedent's estate and whose testimony in the main was favorable to Mr. Fischer's interests, reported one statement of deceased which is consistent only with an express intention on her part to divorce Mr. Fischer. She quotes deceased as saying that the preparation of the cottage at Denville was to furnish a " home for her and I when we were old." In the statement thus quoted there is no mention of Mr. Fischer but rather of the consummation of that declared intention to divorce him.

A girlhood friend of deceased, Mrs. Cohen, who throughout the lifetime of deceased was constantly in friendly and intimate communication with her, also confirms the same fact that this couple were at the breaking point. In fact, Mrs. Cohen testified that they had actually separated at times. She testified further that Mrs. Fischer could not carry on housekeeping and that her infirmities were such that she could not do even the small physical labor involved in the management of a house. She says that Mrs. Fischer referred to the Denville house as a summer home only, complained of the constant expense involved in owning it and expressed a wish that she had not bought it.

In the briefs of counsel for Mr. Fischer's committee and for the New Jersey administrator, attack is made on Mrs. Cohen's veracity and on that of the health official of Denville. The court saw both

of them and is entirely satisfied that both told the truth. Some effort was made to contradict the health official's testimony as to Mr. Fischer's statements at the time the permit was issued to remove the body of deceased. The court finds that there is no real contradiction in what was offered for that purpose. As to Mrs. Cohen, her intention to be truthful was perfectly evident. She gave what the court believes to be an accurate picture of the relations between deceased and her husband and an accurate report of deceased's intentions respecting the bungalow.

In the record are various items which look in different directions on the matter of intent to change residence. Telephone listings, contracts for various services, post office records, tax records, marriage records, an insurance policy and other items furnish basis for argument either way on the subject of intent. The court has considered these as part of the whole body of evidence from which finding must be made of the fact of domicile. The record contains reports of oral declarations made by deceased and by Mr. Fischer from which argument can be made that there had been a change of domicile. Some witnesses placed these declarations at a time when plainly there was no change of domicile intended. Some of them placed the declarations at a time when other facts existed which would make the declarations pertinent on the question of change. Some declarations are in the record as made by Mr. Fischer after the date of his wife's death. Some of these support the claim that he was asserting residence, at least, in New Jersey. Some contemporaneous items are directly contrary to each other. For instance, on his automobile license application he stated that he lived in New York. The insurance policy on the same motor car gives his address as Denville. Some declarations reported in the record are promissory and prospective in their content. Some are not so limited. Much of this character of proof reports Mr. Fischer as making comments concerning his future plans which involved an assumption on his part — contrary to fact — that he was the owner of the Denville property. As noted heretofore, he had no ownership of it and had invested nothing in it. The record is bare of any proof that he ever owned anything in New Jersey.

Much that is in the record revolves about the property of deceased. She apparently kept title to her resources even if she did not control her husband's expenditure of them. Her ownership of land in New Jersey does not establish his domicile there nor even his residence there. So long as deceased's threats of divorcing Mr. Fischer did not reach the point of action her domicile was his. (*Matter of of Daggett*, 255 N. Y. 243.) He could not, however, establish himself in her property at Denville unless she chose, and if she

carried out her intention, expressed to Mrs. Garrison, to divorce Mr. Fischer, he could not well claim that her real estate in New Jersey was his domicile.

It has been said that declarations of the sort reported in this record are the " lowest species of evidence." (*Plant* v. *Harrison*, 36 Misc. 649, 670.) That characterization may not be accurate, but at any rate mere words which may be taken from their setting and given an unwarranted value thereby must yield in importance to acts and conduct which furnish sounder basis for interpretation of intention. The manner and conduct of one's life interpret his intention rather than the text of his declarations. Against conduct, talk has little weight. (*Curtis* v. *Curtis*, 185 App. Div. 391, 396; *Matter of Harkness*, 183 id. 396, 408.) That this couple were New Yorkers in habit, in spirit and in practice is demonstrated by their acts and their respective life histories.

On the issue of Mr. Fischer's domicile the court must consider his birth in the State of New York, his life here for all but some four months in sixty-two years, the fact that these four months were spent in the State of claimed domicile during a period of convalescence and during a season when the occupancy of his wife's property was suitable from the viewpoint of temperature, the fact that his activities were all centered in New York, the fact that his mother and his own children all lived in New York, the fact that immediately upon the death of his wife he brought her body back to New York, the fact that he himself returned to New York after her death and continuously remained in New York, and the fact that he made to sundry people and in sundry circumstances declarations inconsistent with each other but some consistent with an intention to change his domicile.

There can be no question that Mr. Fischer had the right to change his domicile. The principles governing the exercise of that right are discussed in *Plant* v. *Harrison* (*supra*). Their application is governed always by the facts of the particular issue. Where the domicile of origin continues for a long life the presumption of further continuance of such domicile may be especially strong. (*Matter of Horton*, 175 App. Div. 447, 452.) The burden of proof of establishing the fact of change of domicile is on the party here asserting it. (*Matter of Newcomb*, 192 N. Y. 238, 250.) This burden has not been supported and the claim of change must fail. Residence without intention to remain does not effect a change in domicile no matter how long residence is continued. Conversely, even a brief residence with intention to remain will effect a change of domicile. There must combine both the change and the intention. Either standing alone is insufficient. It is impossible on

this record to find either that Mr. Fischer had an intention to permanently reside in New Jersey or that he had no intention to return to New York. The court finds as a fact that he never intended to give up his New York domicile and that deceased never intended to make Denville her permanent home. As stated above, her intention in the absence of maintenance of a home separate from her husband would not have been effective to change her domicile so long as she was married to Mr. Fischer. The whole record satisfies the court that neither deceased nor her husband intended prior to or on August 21, 1933, to establish a domicile in the State of New Jersey. The court finds as a fact that deceased was at the time of her death domiciled in the State of New York.

In view of the result here reached notice must be taken of two matters transpiring in the proceedings.

The first is the matter of evidence and relates to the exclusion of a card record kept by the secretary of a church on which had been entered a notation of a change of address of Mr. and Mrs. Fischer from New York to out of town. The secretary called to establish the record was unable to testify who had given her the information which led to the change and the record is barren of any showing that any person in authority directed any such change or that any information about it was received either from Mr. or Mrs. Fischer. It might well be a record of mere hearsay. It is not entitled to be received in evidence. (*Johnson* v. *Lutz,* 253 N. Y. 124, 128.) Despite the exclusion of this record counsel for Mr. Fischer's committee predicates part of his argument on the facts there recited. This somewhat unusual procedure perhaps warrants the court in saying that the data contained in the record would not change in any aspect the result here reached even if it were attributed properly to Mr. Fischer.

The other matter is the challenge made orally in the proceedings, and before testimony was taken, of the jurisdiction of the court to inquire into the domicile of deceased and to grant original letters after letters had been granted in the State of New Jersey. There is no substance to this claim of lack of jurisdiction. (*Baker* v. *Baker, Eccles & Co.,* 242 U. S. 394; *Matter of Cornell,* 149 Misc. 553, and cases there cited.)

Original letters of administration will issue to the petitioning brother of deceased. (Surr. Ct. Act, § 118.) The prayer for ancillary letters is denied. On the settlement of the decree proof may be submitted of the amount of the estate so that the bond can be fixed.

Submit decree accordingly.