Harold Hyman, J.
This action brought by the plaintiff husband is for a divorce (conversion) from the defendant, his wife. It is based upon a so-called separation agreement, a previously executed and filed written instrument.
The action is presently uncontested by the defendant wife who, although personally present at the trial represented by counsel and testified at the trial, withdrew her answer and counterclaim at the time of trial.
Defendant’s withdrawal of her answer and counterclaim, her reticent attitude to opposing the divorce, and her final act in withdrawing her answer and counterclaim only lend additional fortification to the observation of the court that this entire matter, from its inception to and including the trial, had such a stench about it that it permeated the entire matter, which lent itself to the observation of being a conspir *1010 acy of the parties (the present attorneys having nothing to do with the agreement at its inception or execution) to take outrageous advantage of and, using the vernacular of the present generation, to "rip off’ the general public. The activities of these parties warrant a thorough investigation into the entire matter from its very inception.
The foregoing observations are based upon the following facts:
Plaintiff husband and defendant wife were married on April 4, 1959. There are four children of said marriage ranging in ages from 10 to 15 years; the oldest, a girl, resides with plaintiff, her father; the younger (three) children reside with defendant, their mother.
Plaintiff is 37 years of age and is employed as an aircraft mechanic with a gross salary of $340 per week and a take-home pay of $261 per week. Plaintiff presently maintains an apartment for his oldest daughter and himself for which he pays rent of $193 per month, but he has now arranged for a larger apartment at a rental of $230 per month.
Defendant, who is also 37 years of age, resides in another apartment with the remaining three children, ages 12, 11 and 9. She pays $250 per month rent and $55 per month for utilities, a total basic overhead of $305 per month. Defendant is a student receiving $40 per week as a part-time employee under a student grant. She additionally receives $190 per month in public supplemental assistance (Aid to Dependent Children), $200 per month in food stamps (at a cost to her of $120), and $13.30 per week for school transportation and food for herself as a vocational rehabilitation allowance, a computed net total of $380.93 each month, all of which is "public assistance”.
Although mention was made at the trial of a pre-existing Family Court order directing the plaintiff to pay $80 per week for the support of the four children, with no mention of support for the wife made therein, such order was never produced or offered in evidence, except that at the time of the trial and apparently in consideration of the withdrawal by the defendant of her answer and counterclaim and the payment of a small amount to defendant’s attorney for his services in behalf of the defendant, plaintiff offered a new stipulation wherein he agreed to pay $80 per week for the three children presently residing with defendant, the eldest daughter now residing with plaintiff. But, as appears from the testimony of *1011 the defendant wife at the trial, she apparently never received any such $80 per week from plaintiff as required by the Family Court order, because she testified that she had no income other than that which she enumerated above, from public assistance; and, in addition to such testimony and from an examination of the verified answer and counterclaim (which she withdrew at the trial) this observation is fortified by her contention therein that plaintiff had orally agreed with her to pay her $90 per week for child support and $20 per week for alimony, a total of $110 per week, and that based solely upon such oral agreement did she enter into the written separation agreement, but that plaintiff failed to comply with the terms of said agreement. It is therefore fairly obvious to this court that the spoken and unspoken word lends base to the prior and subsequent conclusions of the court that plaintiff has not contributed to the support of his wife and three children but has left them to be supported by the general public through the medium of "public assistance”; this, even though he admittedly took four exemptions with respect to his Federal income taxes for an amount of $3,000 per annum.
Therefore, the credibility to be given to the so-called "new stipulation” must, to a great extent be based upon the past performance of the plaintiff with regard to the Family Court order, since acts are generally regarded as more important than declarations in determining intention, for, against conduct, talk has very little weight. (Matter of Fischer, 151 Misc 74, affd 243 App Div 685, lv to app den 267 NY xxxviii.)
The written so-called separation agreement, the basis for the divorce requested, was entered into on April 30, 1973. In its preamble it recites that the parties are living separate and apart and agree to continue to do so, and that they "are desirous of settling their property rights and [to] agree on terms for the maintenance of the wife and for the support, maintenance and education of the children”. (Emphasis supplied.)
That is as far as the agreement goes in mentioning or providing for the support and maintenance of defendant wife or the children. It stops right there. There is not one single provision, not one single sentence, not one phrase or word thereafter contained in said agreement which makes provision for the support of the wife or children.
On the other hand, it provides for the wife to have custody of the children and for her to consult with her husband *1012 (plaintiff) as to their education and upbringing and not to alienate the children from him (who contributes nothing to their welfare). The agreement also carefully provides that "Neither party shall be liable for the debts of the other, nor shall either of them have the right * * * to incur debts for the account of the other”, and it also provides against modification of the agreement except by written instrument executed by both parties, as well as for its survival and nonmerger in the event of divorce. The agreement speaks of each party being represented by counsel.
It is upon such a writing that plaintiff husband now seeks a divorce (conversion) pursuant to subdivision (6) of section 170 of the Domestic Relations Law.
Plaintiffs counsel argues that the originally executed agreement is the basis for the action, is the agreement between the parties, and since the trial was for all intents and purposes an inquest, that this court in refusing to accept the terms of the alleged agreement as now supplemented by the so-called oral new stipulation, is "depriving [them] on a Consent Agreement”.
Plaintiff vociferously further contends that this court may not interfere if the plaintiff, upon not being given his divorce, desires to discontinue this action; that to forbid the parties to discontinue this action is to deprive plaintiff of his day in court. Defendant likewise objects to this court directing plaintiff to pay to her alimony and support for the children, because, as she contends, it would play havoc with the public assistance payments received by defendant and the children. Nothing is said as to the rights of the State, the Government and the People who make up the elective body and who pay their taxes, the true source of "public assistance”. Their rights are totally ignored.
Why should the public be considered as against these parties "doing their thing” at public expense? Why should the plaintiff and defendant give any consideration to the public who make do on what a spouse earns, who pay their taxes, with pride pull in their belts, keep their families together and reside in their communities, within their own hard-earned means? Why should the plaintiff and defendant consider or care about them?
The facts in this case present an abhorrent lack of consideration or respect for the rights of others. To receive public assistance . when there is an actual need is certainly not *1013 shameful, but, to actually conspire to require a spouse to apply for and receive public assistance for herself and one’s children when the other spouse is financially well able to and unquestionably capable of supporting his family, is certainly less than fair or commendable. To the contrary, it is downright outrageous. Such tactics lessen the ability of one actually in need of and entitled to receive assistance, to receive same. One who is truly without other resources may be deprived thereof from the same public source because of such tactics. It is truly a greater wrong when the facts indicate that the parties know what they are doing but nevertheless do it with deliberate selfish intent and self-interest. Here, defendant wife is a college student; she is presumably well versed in and knowledgeable of American activities, institutions and way of living. Her husband is likewise a person of education, employed in a highly sensitive job as a skilled mechanic for an airline of great importance in our daily lives, and is also well versed in the American way of life. Under these circumstances, the court believes that it has a duty to do justice not only to the named parties, plaintiff and defendant, but also to the unnamed party, the People of the State and City of New York, who have the main stake involved and whose rights should not be disregarded. It is for these reasons that discontinuance is disallowed.
The so-called agreement upon which this action is based violates every intendment of the Legislature in providing for a separation agreement as constituting a basis for a divorce. It goes without saying that merely because the statute (Domestic Relations Law, § 170, subd [6]) does not spell out what the separation agreement should or must contain, that every document must be classified as being a valid separation agreement within its purview merely when titled as a "Separation Agreement”.
On the very face of this agreement, it makes no provision of any kind for the support of the defendant wife or the children. On its very face it is unfair, inequitable and outrageous. It is a deliberate act, in the nature of an agreement, to exempt a husband and father from his obligations provided for by law. (Family Ct Act, art 4 [which renders the agreement void]; Glusker v Glusker, 108 Misc 287; Pignatelli v Pignatelli, 169 Misc 534.) The entire agreement is, on its very face, permeated with such unlawful intent that it must be declared void, without the slightest force or effect (Dworkin v Dworkin, *1014 247 App Div 213; Golden v Golden, 17 NYS2d 76), not alone by what it does provide, but also by what it fails to provide, in contravention of section 5-311 of the General Obligations Law as well as article 4 of the Family Court Act.
This agreement not only attempts to relieve the husband from his moral natural and statutory duty to support his wife and children (Family Ct Act, art 4) and is therefore void (Haas v Haas, 298 NY 69, 72), but it also seeks to transfer such obligation to the wife, without regard to her resources or financial ability to meet such obligation and with positive unequivocal actual knowledge of her inability to so meet such obligation, plus their actual knowledge of the wife and children then and thereafter being required to receive public assistance. It is therefore also void on that account as being in contravention of the statutory primary obligation of the father to support his children (Family Ct Act, § 413).
Regardless of the agreement or stipulation between the parties, the court is never relieved from the responsibility of protecting the rights of innocent children, even against the wishes of their parents, for children are not chattels whose rights can be bargained away by parents. (Matter of Bachman v Mejias, 1 NY2d 575.) Rather, it is the duty of the court to subject such an agreement to very close scrutiny. (Van Dyke v Van Dyke, 278 App Div 446.) Not only is it the court’s duty to protect the rights of children, but it has a similar duty to bear in mind that the State and its citizenry also have a stake in being protected against abuses by those members of its society who place their own desires and comforts above the rights of others, even to the point of doing so by colorable means. This cannot and must not be tolerated. Society has its rights and its governmental functionaries the duty to see that such type person not be permitted to continue a parasitic existence merely to satisfy his or her own self-interest, to the detriment of others.
The statute provides that a husband of sufficient means or able to earn means is primarily chargeable to support his wife (Family Ct Act, § 412) and his children (Family Ct Act, § 413). Here, plaintiff is earning $340 a week with a take-home pay of $261 per week and although he took the four children as tax exemptions, and thereby saved taxes on gross income to the extent of exemptions of at least $3,000 for the year, he nevertheless did not contribute one cent to their support. He left their support and maintenance to public assistance.
*1015 Having found the so-called separation agreement void, this court is constrained to dismiss the complaint without costs.
On the other hand, even though no counterclaim be interposed, the Supreme Court has the right to exercise its jurisdiction so as to provide for the support and maintenance of a wife by a husband (Kagen v Kagen, 21 NY2d 532), particularly where she is a public charge or is about to become a public charge; and this is so even in the face of a valid separation agreement. (McMains v McMains, 15 NY2d 283) and likewise as an incident to a matrimonial action as well as in habeas corpus proceedings to provide for child support and maintenance regardless of the outcome of a trial or hearing. (Domestic Relations Law, § 240.)
This court, therefore, finds that the defendant wife is entitled to support and maintenance from the plaintiff, and plaintiff is thus directed to pay to defendant the sum of $40 per week so long as she remains as presently employed, and the further sum of $26.66 per week for each of the three children residing with her, making a total sum payable to her each week of $120; this in addition to the $40 per week she presently earns but which will terminate in August, 1976. This will presently supply her with the sum of $160 per week, and later with only $120 per week with which to provide food, clothing and shelter for her three children and herself, four persons, and will leave plaintiff with the sum of $141 per week with which to provide for himself and the one daughter residing with him, two persons. The court considers this to be a fair division of plaintiff’s income, within his means and ability to pay, and within the purview of sections 411, 412 and 413 of the Family Court Act. It will also provide the defendant wife with comparative, almost identical, income and means to enable her to terminate the public assistance now being received by her and the children.
A copy of this decision and of the minutes herein shall be forwarded to the Commissioner of the Department of Social Services for his prompt attention and to the District Attorney of Queens County for such action as may be deemed warranted by each of them in the premises.