MILDRED GREENBERG, Appellant, *v.* DAVIS GREENBERG,
Respondent.

First Department, November 5, 1926.

**Husband and wife — action by wife to restrain husband from prosecuting
action for divorce commenced by him in Mexico — defendant went to
Mexico for express purpose of instituting divorce action there — laws
of Mexico do not require residence by plaintiff in divorce action —
personal service was not made on plaintiff in this action — defendant
admits that he was and now is resident of city of New York — defend-
ant's contention that injunction is not necessary since decree in
divorce action in Mexico would be void is not sustained — courts have
power to restrain defendant from prosecuting Mexican action — tem-
porary injunction continued pendente lite.**

The plaintiff is entitled to have a temporary injunction continued during the
pendency of this action which was brought to restrain the defendant from
prosecuting a divorce action commenced by him against the plaintiff in the
Court of First Instance, in Sonora, Mexico, since it appears that the defendant
who now is and for many years last past has been a resident of the city of New
York, went to Mexico for the express purpose of instituting an action for
divorce against the plaintiff; that the Mexican laws do not require residence
on the part of plaintiff in a divorce action; that the plaintiff was never served
personally in the jurisdiction wherein defendant's action was brought.

The courts of this State have the power to restrain residents thereof from main-
taining an action for divorce in a foreign country, the courts of which have not
acquired jurisdiction of the defendant in the action, and will do so whenever
it is necessary in the interests of justice.

There is no force to the defendant's contention that the plaintiff does not need
the aid of our courts to restrain the prosecution of the Mexican action inasmuch
as any decree entered in the Mexican court will be absolutely void, for, although
the decree will be void in this particular instance, the defendant in the Mexican
action not only seeks to divorce the plaintiff herein, but also questions the
legitimacy of the child of the marriage, and furthermore although the decree
in Mexico may be void in this State, it nevertheless may be recognized as valid
in Mexico, so that the defendant would be free to contract a second marriage
in that country, and furthermore, to permit the Mexican court to grant the
defendant a decree would place the plaintiff herein in an unfavorable light in
the community in which she lives.

APPEAL by the plaintiff, Mildred Greenberg, from an order of
the Supreme Court, made at the New York Special Term and
entered in the office of the clerk of the county of New York on the
23d day of September, 1926, vacating a temporary injunction
restraining the defendant from further prosecution of an action for
absolute divorce instituted by him against the plaintiff in the Civil
Court of First Instance, Hermosillo, Sonora, Mexico, and denying
plaintiff's application to continue the same *pendente lite.*

*George Tilzer* of counsel [*Paul T. Kammerer, Jr.*, attorney], for the appellant.

*Irving D. Lipkowitz* of counsel [*Cohn & Lipkowitz*, attorneys], for the respondent.

DOWLING, J. The action was commenced to obtain a decree permanently and perpetually restraining and enjoining the defendant and any one acting on his behalf from the further prosecution of an action for absolute divorce commenced by him against the plaintiff herein in the Civil Court of First Instance, Hermosillo, Sonora, Mexico.

The complaint herein sets forth that the parties were married on July 3, 1914, at Bayonne, N. J., and that at the time of the commencement of the present action both the plaintiff and defendant were and now are residents and actual inhabitants of the city and State of New York; and that defendant was for twenty years last past a resident of the city, county and State of New York, and now resides at 599 West End avenue in said city. It is then alleged that about May, 1915, the defendant herein, without just cause, reason or provocation, deserted, abandoned and left the plaintiff and since said time has refused and neglected to reside with her and has kept himself away and apart from her, and has resided since said abandonment in the city, county and State of New York as aforesaid.

It is further alleged that at the time of said abandonment and on many occasions prior and subsequent thereto the defendant endeavored to induce the plaintiff herein to depart from her domicile in the State of New York and establish a residence in a different and foreign State for the express purpose of bringing an action for an absolute divorce; that said defendant on such occasions would and did state to the plaintiff that he desired to be free from the bonds of this marital relation, live his own life and do as he pleased; that the defendant in order to induce this plaintiff to bring such an action for absolute divorce in a foreign jurisdiction offered to arrange for and facilitate the procuring of such divorce and as an inducement therefor offered to provide handsomely for the plaintiff and to turn over to her for her own use a vast part of his fortune; that the plaintiff refused to become a party to any such arrangement.

The complaint further sets forth that on June 28, 1922, the defendant herein instituted an action for separation against the plaintiff herein in the county and State of New York, which action is pending and undetermined, though marked "off the calendar" at the request of the defendant.

It is then averred that on or about August 24, 1926, the plaintiff herein was served in the city of New York with a complaint in an action instituted by this defendant, Davis Greenberg, against the plaintiff herein, in the Civil Court of First Instance of Hermosillo, Sonora, Mexico, praying for a divorce with a dissolution of the marriage link. The complaint in that action is attached to the complaint herein and contains allegations that the parties had separated in January, 1915, and had sustained no marital relations to each other since that date, and that plaintiff herein molested the defendant, calling him frequently to the telephone, at least twelve times a day, insulting him at home as well as at defendant's office, calling him " with denigrate epithets " and full of hate towards defendant, proposed to ruin his life and health, and had in fact destroyed his health and ruined his business, " as on account of her persecuting conduct, constant injuries and grave threatments," she had weakened his nervous system and required him to be constantly under medical attendance, abandoning the care of his business. In that complaint, defendant also sets forth that the issue born to plaintiff and defendant is illegitimate. He also cited the portions of the Civil Code of Mexico upon which he based his claim to relief. Article 227, fraction VII, sets forth as grounds for divorce " the menaces, injuries or bad treatments of either husband or wife to the other, if these actions are made to such an extent that would make common life impossible." The same article, fraction XII, provides that " it is also ground for divorce the separation in fact of husband and wife without any marital relations for over six months." The order of the judge in said Mexican court directed that the defendant herein pay to his wife and daughter for their support " the monthly allowance for their alimentariness, which he assures he is actually paying, and which will be not less than one hundred pesos a month or its equivalent in legal money of the place where they reside." In his complaint in the Mexican action the defendant gave as his residence the city of New York and that of his wife as 3530 Thirty-fourth street, Elmhurst, L. I., State of New York. There was no claim made that either of the parties had ever resided in Mexico, though the complaint imports to be dated at Hermosillo and defendant says: " I do authorize Lawyer Ernesto Camou with Office at number 5 Serdan Street of this City, to hear in my name all the notifications made, designating the same residence to receive such notifications, as I have to leave the City on business and I have given Special Power of Attorney to said Lawyer to represent me in the present divorce suit."

The complaint in the present action then proceeds to set forth:

"*Fourteenth.* That the plaintiff herein is financially unable to

bear the expense of defending the action brought against her in the Court of First Instance of Hermosillo, Sonora, Mexico, nor can she bear the expense of maintaining herself in the employment of counsel of high standing and prominence as would be able to cope with counsel employed by the defendant herein, who is a man of vast income and fortune, and all additional expenses to prosecute the action on her behalf including the expense of bringing witnesses from New York and necessarily maintaining them while in Mexico. That all the witnesses for the plaintiff and the defendant herein and the plaintiff and defendant are residents of the State of New York. That all the acts alleged by the defendant herein are alleged to have happened in the State of New York.

"*Fifteenth.* That plaintiff will be irreparably damaged and will be apparently deposed of her status as the wife of the defendant herein and of her property rights if the defendant be permitted the action for divorce instituted by him in Mexico, and in addition thereto the infant daughter's rights will be irreparably damaged.

"*Sixteenth.* That the plaintiff has no adequate remedy at law for the grievances herein set forth and is relievable only in a Court of Equity where matters of this sort and kind are properly cognizable and returnable."

The plaintiff herein obtained a temporary injunction "that the defendant, Davis Greenberg, and his agents, attorneys, solicitors, counsels and all other persons acting for or in his behalf, be, and they and each of them hereby are enjoined and restrained, until the further order of this Court, from prosecuting, going forward, seeking to serve by publication or otherwise taking or procuring to be taken, any judgment, decree or relief by default, taking testimony in or taking any further step or procuring any act to be done or accomplished in, or in furtherance of the aforesaid original bill in the nature of an action for divorce, filed by the defendant herein, as plaintiff, against the plaintiff herein as defendant, for a divorce in the Civil Court of the First Instance in Hermosillo, Sonora, Mexico."

An order was also granted directing defendant to show cause why this injunction should not be continued during the pendency of the action. This relief was denied, and from the order refusing it, the present appeal is taken.

In opposition to this motion to continue the temporary injunction *pendente lite* defendant made no effort to contest the allegations as to the continued residence of plaintiff and himself in the city of New York. On the contrary, he admits a joint matrimonial domicile there for a time. As to his own residence, he says in his opposing affidavit: " In the Spring of this year I went to Hermosillo,

Sonora, Mexico, to subject myself to the jurisdiction of the Court and for the purpose of obtaining a divorce according to the law of Sonora, Mexico. I made absolutely no attempt to conceal the fact that I was and am a citizen and resident of the State of New York. On the contrary I fully apprised my counsel there of that fact and the same is affirmatively alleged in my application for a divorce, the original and a translation of which the plaintiff has attached to her motion papers. The Court will observe from an examination of the same that the very second line states that I am a resident of the State of New York. The fact of the matter is that it is not necessary, as I am advised, to establish any pretended residence in Sonora, Mexico, as it is in the State of New York and the other states of the United States. It is only essential that the party applying for the divorce subject himself to the jurisdiction of the Mexican Courts by voluntarily appearing at Sonora, Mexico, and signing the complaint and a power of attorney to any local attorney in Sonora."

He further sets forth at other parts of his affidavit: " The plaintiff knows that my business interests and all of my friends have always been and now are in New York City and that which has always prompted me to remain here will necessarily prompt me to remain here in the future. I have never entertained any thought of leaving the State, nor do I now entertain any thought of leaving it at any future time; " and further: " I have lived in New York City ever since I came to the United States, and do not propose changing my residence despite any of the plaintiff's wild imaginings."

Finally, he admits the utter invalidity of the decree which he is seeking to obtain, for he swears:

" I am advised by my counsel that a decree of the Courts of Mexico obtained under the circumstances present in the case at bar, that is, where the defendant is not served with process within the jurisdiction of the Courts of Mexico and does not voluntarily appear in such action, and where the matrimonial domicile of the parties has never been within the jurisdiction of the Courts of Mexico, is absolutely null and void so far as this plaintiff is concerned. I am further advised that such decree in no way affects the status of this plaintiff or any of her property rights, including her right to support.

" Under these circumstances I am advised by my counsel that no injury, irreparable or otherwise, can come to the plaintiff from the entry of any decree in the Mexican Courts and that her remedy at law is adequate and complete should any decree be attempted to be used ' as a shield or as a sword ' and that by reason of all the foregoing this application should be in all respects denied."

It would be difficult to find a case which appeals more to the discretion of the court to give the fullest measure of injunctive relief possible than the present one, where defendant impudently and brazenly sets up the worthlessness of the decree against a citizen of this State which he, also a citizen of this State, is seeking in a foreign jurisdiction, which he sought out and to which he voluntarily submitted himself, in the effort to be rid of his wife by a divorce which, upon the same facts, he could not hope to obtain in this State. The numerous cases which have already come before us where an effort has been made by citizens of this State to obtain foreign divorces which this State cannot recognize, justify a restatement of the views of this court upon the appropriate relief which the threatened party can obtain from the courts of this State to prevent the humiliation, distress or injury which may follow in the wake of the granting of a foreign decree of divorce which is absolutely without force in this State.

At the outset the proposition is well established that a court has the power to enjoin and restrain residents within its jurisdiction from prosecuting an action commenced in a foreign jurisdiction.

One of the leading cases on the subject is *Cole* v. *Cunningham* (133 U. S. 107) where Chief Justice FULLER said (at p. 116): " The jurisdiction of the English Court of Chancery to restrain persons within its territorial limits and under its jurisdiction from doing anything abroad, whether the thing forbidden be a conveyance or other act, *in pais*, or the institution or the prosecution of an action in a foreign court, is well settled.

" In *Penn* v. *Lord Baltimore*, 1 Ves. Sen. 444, Lord HARDWICKE recognized the principle that equity, as it acts primarily *in personam* and not merely *in rem*, may, where a person against whom relief is sought is within the jurisdiction, make a decree, upon the ground of a contract, or any equity subsisting between the parties, respecting property situated out of the jurisdiction. 2 Lead. Cas. in Eq. (4th American edition), 1806, and cases.   *   *   *

" *Penn* v. *Lord Baltimore* is cited with approval by Chief Justice MARSHALL in *Massie* v. *Watts*, 6 Cranch, 148, where a suit was instituted in the Circuit Court of Kentucky to compel the conveyance by the defendant of the legal title of land in Ohio, on the ground that he had notice, when it was purchased, of the prior equity of the complainant. The defence was that the land was beyond the jurisdiction of the court and within the State of Ohio. This defence was overruled by the court below, and its decision affirmed by this court. ' This court is of opinion,' said the Chief Justice, ' that in a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person

be found, although lands not within the jurisdiction of that court may be affected by the decree.' P. 160.

"And in *Pennoyer* v. *Neff*, 95 U. S. 714, 723, it is said in the opinion of the court by Mr. Justice FIELD:

" ' The State, through its tribunals, may compel persons domiciled within its limits to execute, in pursuance of their contracts respecting property elsewhere situated, instruments in such form and with such solemnities as to transfer the title, so far as such formalities can be complied with; and the exercise of this jurisdiction in no manner interferes with the supreme control over the property by the State within which it is situated. *Penn* v. *Lord Baltimore*, 1 Ves. Sen. 444; *Massie* v. *Watts*, 6 Cranch, 148; *Watkins* v. *Holman*, 16 Pet. 25; *Corbett* v. *Nutt*, 10 Wall. 464.'

" In *Lord Portarlington* v. *Soulby*, 3 Mylne & K. 104, 106, Lord Chancellor BROUGHAM reviews the history of the jurisdiction to restrain parties from commencing or prosecuting actions in foreign countries, and concludes:

" ' Nothing can be more unfounded than the doubts of the jurisdiction. That is grounded, like all other jurisdiction of the court, not upon any pretension to the exercise of judicial and administrative rights abroad, but on the circumstance of the person of the party, on whom this order is made, being within the power of the court.' *Earl of Oxford's Case*, 1 Ch. Rep. 1; S. C. 2 Lead. Cas. in Eq. 1316.

" Mr. Justice STORY states the principle thus:

" ' But, although the courts of one country have no authority to stay proceedings in the courts of another, they have an undoubted authority to control all persons and things within their own territorial limits. When, therefore, both parties to a suit in a foreign country are resident within the territorial limits of another country, the courts of equity in the latter may act *in personam* upon those parties, and direct them, by injunction, to proceed no further in such suit. In such a case, these courts act upon acknowledged principles of public law in regard to jurisdiction. They do not pretend to direct or control the foreign court, but, without regard to the situation of the subject matter of the dispute, they consider the equities between the parties, and decree *in personam* according to those equities; and enforce obedience to their decrees by process *in personam* * * *. It is now held that whenever the parties are resident within a country, the courts of that country have full authority to act upon them personally with respect to the subject of suits in a foreign country, as the ends of justice may require; and, with that view, to order them to take, or to omit to take, any steps and proceedings in any other court of justice,

whether in the same country, or in any foreign country.' Story Eq. Jur. §§ 899, 900.

" In *Phelps* v. *McDonald*, 99 U. S. 298, 308, Mr. Justice SWAYNE uses this language:

" ' Where the necessary parties are before a court of equity, it is immaterial that the *res* of the controversy, whether it be real or personal property, is beyond the territorial jurisdiction of the tribunal. It has the power to compel the defendant to do all things necessary, according to the *lex loci rei sitæ*, which he could do voluntarily, to give full effect to the decree against him. Without regard to the situation of the subject matter, such courts consider the equities between the parties, and decree *in personam* according to those equities, and enforce obedience to their decrees by process *in personam.*'

" Such is undoubtedly the result of the clear weight of authority, and the rule has been often applied by the courts of the domicil against the attempts of some of its citizens to defeat the operation of · its laws to the wrong and injury of others."

The general rule is thus stated in 22 Cyc. 813: "A court of equity has clear and undoubted jurisdiction, on a proper case being made out, to restrain persons within its jurisdiction from prosecuting suits in foreign courts. The injunction should be granted whenever the equities of complainant· require it, and the location of the court where the action is pending is immaterial. This jurisdiction is not founded upon any pretension to judicial or administrative rights abroad, but solely upon the fact that the person of the party to be enjoined is within the jurisdiction of the court and he can be prevented from doing an inequitable thing."

In High on Injunctions (Vol. 2 [4th ed.], § 1401-a) it is said: " Where a husband or wife leaves the State of their domicile and goes to a foreign State and there secures a mere nominal or colorable residence for the purpose of bringing divorce proceedings, such a case of injustice and irreparable injury is made out as to entitle the aggrieved spouse to an injunction restraining the other from prosecuting divorce proceedings in that State based upon such pretended domicile."

In *Royal League* v. *Kavanagh* (233 Ill. 175) the court said: " There is no question as to the right to restrain a person over whom the court has jurisdiction from bringing a suit in a foreign State * * *. The courts do not, in such cases, pretend to direct or control the foreign court but the decree acts solely upon the party. The jurisdiction rests on the authority vested in courts of equity over persons within the limits of their jurisdiction and amenable to process, to stay acts contrary to equity and good conscience.

" The State has power to compel its own citizens to respect its

laws even beyond its own territorial limits, and the power of the courts is undoubted to restrain one citizen from prosecuting in the courts of a foreign State an action against another which will result in a fraud or gross wrong or oppression."

This jurisdiction of the courts of our State has been exercised repeatedly in matrimonial cases. This State has settled as its adjudged policy to refuse to recognize as binding a decree of divorce obtained in a court of a sister State, not the matrimonial domicile, upon grounds insufficient for that purpose in this State, when the divorced defendant resided in this State and was not personally served with process and did not appear in the action. Referring to that policy, Judge COLLIN said in *Hubbard* v. *Hubbard* (228 N. Y. 81 [followed in *Gould* v. *Gould*, 235 N. Y. 14, 25], at p. 85): " The reason for the stated policy of this State is its statutory' adoption of the rule that there may be of right but one sufficient cause, to wit, adultery, for absolute divorce. (*People* v. *Baker*, 76 N. Y. 78, 88.) The principle of comity between the States of the United States does not require of a State the operation of a divorce decree of a sister state which violates the principles, of morality, or the public policy, or municipal regulations established by it. Apart from constitutional obligations the law of no State can have effect as law beyond the territory of the State imposing it, unless by permission of the State where it is allowed to operate. The policy of this State is not embodied in any legislative enactment or is not a rule of universal law. It exists to promote the permanency of the marriage contracts, and the morality of the citizens of the State.' "

To protect the citizens of this State in their rights, it is not necessary that the offending litigant should be allowed to carry through his scheme of evasion of the laws of his own State to a successful completion, and leave the aggrieved party to defend his rights against such a judgment, so fraudulently obtained, when it is set up in some proceeding here. The rule is as laid down in 22 Cyc. 814: " Evasion of laws of domicile. A citizen of one State may be enjoined from prosecuting an action against another citizen of the same State, in a foreign jurisdiction, for the purpose of evading the laws of his own State.

"An injunction has frequently been granted at the instance of a debtor to restrain a resident creditor from attempting to enforce a claim in a foreign jurisdiction, where the attempt, if successful, would deprive the debtor of his exemption under the local law; especially where the creditor is attempting to reach exempt wages, earned in the State of residence, or property only temporarily removed therefrom to another State.

"An injunction is also proper to restrain a fraudulent action for a divorce brought in another State to evade the laws of the domicile, or an action brought by a creditor in another State for the purpose of securing a preference and to evade the insolvency law of the domicile."

That power exists to enjoin the prosecution of an action in a foreign jurisdiction where that action operates to the detriment of a resident of the State where injunctive relief is sought was determined in a well-reasoned opinion in the case of *von Bernuth* v. *von Bernuth* (76 N. J. Eq. 177) where the court said (at p. 183): "An examination of the general subject will disclose the fact that the Courts have exercised the jurisdiction in cases where the foreign action operates to the substantial detriment of the resident, not only where the claim is equitable, but also where it is legal. In *Harris* v. *Pullman*, 84 Ill. 20; 25 Am. Rep. 416, the jurisdiction was put upon the ground that it was inconsistent with interstate harmony that after a suit had been commenced in one of the States, the prosecution thereof should be controlled or interfered with by the Courts of another State. In *Sandage* v. *Studabaker*, 142 Ind. 148; 51 Am. St. Rep. 165, it was put upon the ground that the foreign suit could not be instituted for the purpose of evading the laws of the State in which the plaintiff lived. In *Keyser* v. *Rice*, 47 Md. 203; 28 Am. Rep. 448, it was put upon the ground of oppression and vexation. In this case the necessity for the exercise of the jurisdiction is very clear. The facts bring it within that class of cases which permit injunctions to issue to restrain foreign actions on the ground of oppression and vexation, and likewise upon the general ground that the cause of action was within the jurisdiction of the Court appealed to before any attempt was made to compel the petitioner to submit to a foreign tribunal. In *Miller* v. *Gittings*, 85 Md. 601; 60 Am. St. Rep. 352, an injunction was issued in favor of a resident of Maryland against his creditor, also a resident of that State, to restrain the creditor from pursuing the debtor in the New York Courts by process of arrest, a remedy which he could not have in their home State. The case is thoroughly considered and contains a valuable collection of cases on the subject. In *Dehon* v. *Foster*, 4 Allen, 545, the Supreme Court of Massachusetts enjoined a citizen of that State from prosecuting a debtor by attachment in Pennsylvania because the effect of allowing the attachment suit to go to judgment would be to give the attaching creditor a preference over other creditors and so defeat the operation of the Massachusetts Insolvent Law. In *Hawkins* v. *Ireland*, 64 Minn. 339; 58 Am. St. Rep. 534, a citizen of Minnesota was restrained from prosecuting an action in a foreign State where it was neces-

sary to prevent one citizen from obtaining an inequitable advantage of another. In Vermont it was declared that the jurisdiction would be exercised in that State only when the ends of justice and not the convenience of parties required it. *Bank of Bellows Falls* v. *Rutland Railroad Co.*, 28 Vt. 470. In Indiana an injunction issued where the attempt was made to enforce a claim in a foreign jurisdiction in such a manner as would deprive the debtor of his exemption under the laws of Indiana. *Wilson* v. *Josephs*, 107 Ind. 490. The same doctrine was held in Ohio in *Snook* v. *Snetzer*, 25 Ohio St. 516, and in Wisconsin, *Griggs* v. *Doctor*, 89 Wis. 161; 46 Am. St. Rep. 824.

" The restraint sought for by the petitioner does not .impugn the policy of the State of New York, for the reason that the rule which prevails in New Jersey on this subject also prevails there. Indeed, Chancellor RUNYON based his opinion in *Home Insurance Co.* v. *Howell* (1873), 24 N. J. Eq. (9 C. E. Gr.) 238, largely on the early New York case of *Mead* v. *Merritt* (1831), 2 Paige, 402. The doctrine has since been applied in numerous cases. *Newton* v. *Bronson*, 13 N. Y. 587; *Gardner* v. *Ogden*, 22 N. Y. 327; *Stevens* v. *Central National Bank*, 144 N. Y. 50. See, also, *Kittle* v. *Kittle*, 8 Daly N. Y. 72. It therefore appears that the power which is invoked actually inheres in this Court, that the present case is one in which it should be exercised, and that the exercise will not contravene the public policy of the State of New York."

The precise point in issue here was decided in *Gwathmey* v. *Gwathmey* (116 Misc. 85; affd., without opinion, 201 App. Div. 843) where Mr. Justice DONNELLY said (at p. 88): " It appears from the proof submitted that the defendant cannot obtain a judgment in the Florida suit which will be binding on the plaintiff. She should not therefore be subjected to the trouble of appearing in the Florida court to resist her husband's claim or of attacking such a decree as he might obtain when it is attempted to be enforced in this State. This court has power to restrain him from carrying on an inequitable, harassing and vexatious suit in another jurisdiction. This power is not predicated on the right to interfere with and control the course of proceedings in other tribunals, but the jurisdiction is founded on the authority vested in courts of equity over persons within the limits of their jurisdiction and amenable to process to restrain them from doing acts which will work an injury to others, and are therefore contrary to equity and good conscience. *Claflin & Co.* v. *Hamlin*, 62 How. Pr. 284; *Dehon* v. *Foster*, 4 Allen, 545; *Locomobile Co.* v. *American Bridge Co.*, 80 App. Div. 44, and other cases above cited. Motion for a. preliminary injunction granted."

To the same effect is the decision in *Forrest* v. *Forrest* (2 Edm. Sel. Cas. 180, 186) where the court said: " It is manifest from the facts as they are spread before me, that the defendant cannot obtain, in his suit in Pennsylvania, a decree which can be binding on his wife here.  Would it be right to subject her unnecessarily to the harassing evils of even an invalid decree, or compel her to expend the allowance made to her by her husband, in resisting the granting of such a decree? "

There is no difference between a case where a citizen of this State is seeking to obtain a fraudulent divorce in another State by attempting to set up a fictitious residence therein, and one where such a citizen seeks to evade the laws of this State by voluntarily submitting himself to a foreign jurisdiction and obtaining a fraudulent decree of divorce there.  The result is the same in either case — a willful defiance of the laws of this State, whose duty it is alike to protect her citizens whose rights are being attacked and sought to be destroyed, and to enjoin the citizen who is trying to effectuate the fraud in another State.

Nor is it an answer to this application for relief to say that the decree of divorce sought to be obtained in Mexico will be invalid in this State and, therefore, plaintiff needs no injunction to prevent its issuance.  The defendant cannot be presumed to have gone to the expense and trouble of placing himself under the jurisdiction of the courts of Mexico as a mere gesture of protest or spite.  He is endeavoring not merely in that forum to obtain a decree of divorce but to question the legitimate birth of his child and to settle the amount he is to pay for the maintenance of wife and child here. He says he is now advised by his counsel (presumably his New York counsel) that a decree obtained in Mexico under the circumstances present in his case there, is absolutely null and void so far as this plaintiff is concerned.  Why then does he object to his useless action being enjoined and why does he fail to abandon it, but on the contrary resist any attempt to halt its progress?  If he were allowed to prosecute his Mexican action to judgment, undoubtedly he would then find Mexican counsel to advise him that his divorce obtained there was valid in Mexico, and that he was free to contract a second marriage in that country.  Thus plaintiff would be in danger of having her status assailed and her rights invaded by having a husband with one wife in New York and another in Mexico.

Furthermore, the mere fact that a husband has secured a divorce from his wife gives ground for suspicion at least of the virtue and fidelity of the latter, on the part of the general public, in the domicile of both parties, who are unacquainted with the infinite variety of causes for which divorces may be granted in other jurisdictions

and have heard only of the usual statutory ground for divorce in this State. A wife who has given no ground for divorce in this State where she and her husband have always lived during their married life, should not be exposed to the humiliation and doubt as to her status raised by a judgment of divorce in another State, even if fraudulently obtained and invalid here.

There are many conceivable uses to which such a judgment of divorce could be put, causing plaintiff expense, litigation, worry, annoyance and misrepresentation. It is no answer to say that she must ultimately succeed against any attack made upon her, under the judgment, as it is invalid. The true answer is, that as a citizen of this State she is entitled to the aid of its courts to prevent the commission of a threatened wrong by her husband, also a citizen of this State, by his obtaining a decree of divorce in another jurisdiction, in evasion of the laws of this State, in violation of her rights and in consummation of a patent fraud.

The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs. Settle order on notice.