In the Matter of the Estate of EDWARD N. JOHNSTON, Deceased.

Surrogate's Court, New York County, October 3, 1936.

*Kleenberg & Greenwald,* for the petitioner.

*Hines, Rearick, Dorr & Hammond* [*A. O. Dawson* and *A. F. von Bernuth* of counsel], for the intervenor-respondent.

DELEHANTY, S. Deceased was born in Missouri. He entered the United States Military Academy as a cadet from the State of Oregon. After graduation from the academy he served in the regular army until retirement age in the early 1920's. He was then a colonel of engineers. He went to California with his family and became consulting engineer for the water department of the city of Long Beach, Cal. He resided there for many years and eventually became interested in mining ventures which caused him to terminate his connection with the city of Long Beach. His mining activities required extensive travel to the eastern seaboard, to Europe, to Central America and to South America. In 1930 and 1931 deceased with his family lived in a home which he purchased at Pelham, N. Y. For a time he had an office in an office building in New York. Business losses and other difficulties in his affairs caused him to sell his home and to close his office in 1931. The office furniture was moved to Plainfield, N. J., where it still is. The furnishings of the household were moved to Cincinnati, O., where they still are.

Before purchasing the home in Pelham, N. Y., deceased had been in Europe for some three years with his wife and minor children. When he sold his Pelham home and removed his office furniture to New Jersey his wife and children went to Cincinnati, O., and deceased returned to Europe on his business affairs. He came back to America and went to South America. From there he went to San Francisco, Cal., where was located the office of the companies in which he was interested. After his business reverses had caused the closing of his office and of his home in New York State deceased became subject to recurrent attacks of illness. His older daughter, who is the issue of a first wife, joined him in his travels and continued more or less regularly to act as his secretary during his South American and Central American trips and after he had returned to California. Regular and cordial communications passed between deceased and his wife who was still in Cincinnati, O., with his minor children. Eventually and without his previous knowledge she came to California with her children and took up her residence in

the same hotel in which he and her stepdaughter were living. The stepdaughter soon thereafter left and promptly upon her leaving the family was reunited and from that time, except for an interval during which deceased was in the State of New York in connection with business controversies, deceased personally lived in California with his family.

After establishing the common household with his wife and minor children in San Francisco, deceased came to New York with the purpose of going on to Europe in connection with his business enterprises. He was detained in New York because of the breaking out of a controversy between him and the attorney who had represented him in these mining ventures. That controversy lasted for months and caused great expense and distress to deceased. While he was so compelled to stay in New York city he was joined by his older daughter who again resumed her duties as his secretary. Deceased became seriously ill here before the controversies were finally disposed of and eventually suffered a paralytic stroke. Before this happened he had arranged to go to his home in California and had arranged for his wife to come on from California so as to assist him on his journey there. Her coming pursuant to this arrangement was delayed by reason of his paralytic stroke but eventually she came on and with the aid of a nurse brought the deceased home to California. There he recovered a measure of his health and there he remained from September, 1935, to June, 1936, when he died.

Throughout the entire history of deceased's travels since the sale of his house at Pelham he was in affectionate communication with his wife. The letters in evidence make it perfectly clear that he held his wife in deep affection, that he had a deep parental concern for his minor children and that he was looking forward to the time when the settlement of his business difficulties would permit him once more to rejoin them and to maintain them in the comfortable manner which had been possible prior to his business losses.

It is quite apparent that representations by him in writing and orally that he resided in New York State were made because he had a layman's idea that he could gain some advantages for himself in existing or threatened litigations by claiming to be a resident of New York. It is quite clear that he was apprehensive of attachment of his property here if he were to be classified as a non-resident. Since the litigations threatened or in progress presented a prospect of a lengthy period of stay in New York, deceased was determined that so far as he could do so he would avoid any advantage to his adversaries arising out of his actual lack of domicile in this State. He had somewhat similar fears of litigation in California and, as

his correspondence shows, was desirous that the person from whom he feared attack there would have no knowledge of his projected return to his home.

During his stay in the army he had a bank account in Washington, D. C. After his retirement he had most of his assets either in San Francisco or in Boston, Mass. While in the controversy with his former attorney here he had some of his money and securities in New York but chiefly in the name of his daughter. While the putting of his safe deposit box in her name and the establishment of a bank account in her name may be accounted for partly by his illness, it seems on this record to have been dictated chiefly by the desire to conceal his property from attack. Long before his death he had all his assets in New York State removed from this State. When he died all were in California except the furniture and a small balance in the Washington, D. C., bank. In California he had an account in one bank in his own name and another account in the name of an attorney in fact for him.

When he died and for a long period antecedent that date deceased had no place of abode in New York State and he had no property in this State. He lived in a home in the State of California with his wife and children. For years before his death his children attended school in California. He paid for their care and for the household there. His business interests were located in California in the sense that the offices of the companies in which he was interested were located there. As already stated, all but his furniture and a trifling part of his cash assets were in California and had been for months before he died. They had been collected and transmitted there from New York, Boston and other places after his wife brought him back to California.

On this record we have presented the case of a person whose domicile of origin was Missouri, whose actual domicile in New York State lasted less than a year while he owned a home at Pelham, N. Y., who had wholly disposed of that home, who had physically taken up a new home elsewhere for his family, who had individually been compelled by business necessity to live a somewhat nomadic life, who had throughout the whole period of his absences from his family shown the warmest and most affectionate interest in them and in their welfare, who had finally established his wife and his minor children in a new home in California, the State where he had for years been domiciled with them after his army service, who had brought together there all of his resources and who had died there after a planned return to that domicile. In such circumstances it is to be doubted whether any question of fact is presented on this record. It seems rather that as matter of law

this man's domicile was in the State of California (*Matter of Trow-bridge*, 266 N. Y. 283), even though in writings both before and after his removal to the home in which he died he declared that he was a resident of New York. The actual facts demonstrate that he was not a resident of this State. His declarations that he was cannot overbear such facts. If an issue of fact can be found upon this record then it must be decided adversely to the contention made that at his death he was a resident of New York State. No other conclusion would accord with any common-sense view of the record here presented. (*Matter of Harkness*, 183 App. Div. 396; *Matter of Mesa y Hernandez*, 172 id. 467; *Matter of Lydig*, 191 id. 117.)

The issue of domicile arises here because this proceeding is one to compel the filing of the will of deceased preliminary to probate here. No property of deceased being within this State this court has no jurisdiction unless deceased was domiciled in this State when he died. Having found in fact that he was not so domiciled, the proceeding must be and is dismissed.

Submit, on notice, decree adjudging that deceased was not at the time of his death domiciled in the State of New York and directing that the proceeding be dismissed.