CONSTANCE WILCOX PIGNATELLI, Plaintiff, *v.* GUIDO PIGNATELLI, Defendant.

Supreme Court, Special Term, New York County, January 12, 1938.

*Chadbourne, Wallace, Parke & Whiteside* [*George W. Whiteside* and. *Horace G. Hitchcock* of counsel], for the plaintiff.

*Dunnington, Bartholow & Miller* [*Theodore J. Miller* of counsel], for the defendant.

SHIENTAG, J. This is an action for a judicial separation and for a declaratory judgment declaring plaintiff to be defendant's lawful wife and declaring void a decree of divorce obtained by the defendant in Nevada. Plaintiff, an American citizen, and defendant, a subject of the Kingdom of Italy, were married in this country in 1925. They lived together until 1935, when they separated. In 1937 defendant procured a divorce from plaintiff in Nevada. A day later he married another woman. The validity of the Nevada divorce is now contested. Defendant did not testify at the trial.

The defendant contends (1) that plaintiff has not met the residence requirements of section 1162 of the Civil Practice Act entitling her to maintain the separation action; (2) that a valid separation agreement between the parties is outstanding and constitutes a complete bar to the action for separation; and (3) that no declaratory judgment should be rendered since it is ancillary to the principal suit and because plaintiff was not a resident of the State at the time the action was begun.

Plaintiff seeks to bring herself within two subdivisions of section 1162 of the Civil Practice Act, which provide that an action for separation may be maintained: " 1. Where both parties are residents of the State when the action is commenced   *   *   *.   3. Where the parties, having been married without the State, have become residents of the State, and have continued to be residents thereof at least one year; and the plaintiff is such a resident when the action is commenced."

Residence, as used in this section, does not mean mere physical presence, but is synonymous with " domicile." (*de Meli* v. *de*.

*Meli*, 120 N. Y. 485. See *Matter of Rooney*, 172 App. Div. 274, 278.) Before a place of abode will be considered a person's "domicile," the person must actually reside there with the fixed intention of making it his permanent home. Both residence and intention are essential; and residence alone, no matter how long, can only be important as a ground from which to infer intention. Once a domicile has been established, however, a person need not reside there continuously, but may reside elsewhere so long as such residence is not accompanied by an intent to make the new place his home. (*Gould* v. *Gould*, 235 N. Y. 14, 29. See, also, *McDonald* v. *McDonald*, 241 App. Div. 457; affd., 265 N. Y. 546.) A domicile having been established, whether of origin or choice, it continues until a new domicile is acquired. The acquisition of a new domicile involves the present and definite purpose to abandon the old and take up the new place as the home of the person whose status is under consideration. (Restatement of the Law of Conflict of Laws, §§ 14 *et seq.; Dupuy* v. *Wurtz*, 53 N. Y. 556; *Matter of Newcomb*, 192 id. 238.) Citizenship is not a determining factor in questions of domicile, although it is a fact to be considered with others in ascertaining intention. (*Matter of Robitaille*, 78 Misc. 108, 113.)

The question of what place shall be considered the domicile of a party is rather one of fact than of law, and courts must draw their conclusion from all the circumstances of a given case. (*Matter of Newcomb, supra; Matter of Martin*, 219 N. Y. 557.) Each case varies, and what may be of great weight in one may in another be so qualified as to be of little importance. In determining a person's intention to make a place his home consideration must be given to the physical characteristics of his dwelling place, the time he spends there, the things he does there, who lives there with him and what possessions he keeps there, his mental attitude towards the place, his intention when absent to return there, his attitude towards other places with which he has contact. (Restatement of the Law of Conflict of Laws, § 13.) In short, the court must weigh the subtle ingredients that compose a person's relation to his various dwellings, and determine from them which dwelling is his home. (*Dupuy* v. *Wurtz, supra; Matter of Trowbridge*, 266 N. Y. 283.)

The plaintiff was born in New York; the defendant in Italy, of which country he is still a citizen. When plaintiff and defendant met in 1924 she was living with her parents in New York city. Her father had been a practising attorney in Michigan but had retired. He was at that time passing his winters in New York, his summers in Madison, Conn., and also spending some time in travel. The property in Madison had been in the possession of plaintiff's family

since about 1740, but was used by her parents exclusively as a summer home until 1936. The defendant was also residing in New York in 1924, when he met the plaintiff.

The parties were married on August 28, 1925, in Madison, Conn. At that time defendant was employed by a New York concern. After the marriage the parties left to honeymoon in Europe, from where they returned in November, 1925. They took an apartment in New York city under a lease which ran until October 1, 1926. In April, 1926, however, they again left for Europe, retaining their New York apartment, and returned to New York in August, 1926. After a short stay in New York city the parties went to the home of plaintiff's parents in Madison for a visit and spent the period until December, 1926, visiting in Madison and other parts of this country and Canada. In December, 1926, they went abroad again and stayed abroad until the summer of 1929. During this period plaintiff made short visits to this country, principally in connection with the estate of her father. He died in 1928, and his will, probated in Connecticut, left to the plaintiff real estate in Connecticut and mortgages on Connecticut property.

The summer of 1929 was passed in Madison, and in the fall of 1929 an apartment was again taken in New York city. In February, 1930, the parties left for Europe, and stayed abroad this time until the summer of 1933. The defendant returned from Europe in June, 1933, and went to Maine for the summer. The plaintiff returned in August, 1933, and spent the summer visiting in Madison and in Maine with her husband. The winter of 1933 was spent in New York, though the parties lived in separate apartments in the city. In February, 1934, however, the defendant went to California, where he stayed until early May, 1934, when he returned to New York.

On June 1, 1934, they both sublet an apartment in New York under a lease which ran until October, 1934. During this period the child of the marriage passed the summer at Madison with her nurse, and plaintiff visited her there over week-ends. On October 1, 1934, the parties leased another apartment in New York and sent their child to school in New York, which she has since continued to attend. In June, 1935, defendant left the plaintiff and took up residence in a hotel in New York city.

Since June, 1935, the plaintiff has lived continuously in New York city, save for visits to and vacations spent at her mother's home in Madison. The defendant, however, continued to move about. From June to October, 1935, he was in Iowa; in October he returned to New York, but left soon after for Europe. He returned from Europe to New York in April, 1936, where he was employed and

where he stayed, save for a short period of employment in Rhode Island and visits to Florida, until January, 1937, when he left for Nevada to procure a divorce. So much for the actual peregrinations of the parties.

There are other circumstances which may have a bearing on the intention of the parties as to their domicile. These are principally the declarations of the parties themselves. In his application for a marriage license in 1925 defendant gave his residence as New York city. In an undated application for employment with the Securities and Exchange Commission, evidently filled out some time between June and October, 1934, defendant gave New York city both as his present address and as his legal residence. A subsequent application for employment with a New York concern, made in 1936, gave New York city as his address. A customer's card given in connection with a brokerage account, checks and telephone listings all recited that his residence was New York city. In the Nevada action, however, he gave Madison as his matrimonial domicile.

The plaintiff's passport applications were signed in Connecticut and gave her permanent residence as Madison, Conn. Her Connecticut tax returns from 1929 to 1936, based exclusively on real property owned in that State save for the inclusion of one item of personal property, a small car registered in Connecticut, gave her post office address as Madison. Her driving licenses were issued in Connecticut from 1933 to 1937 and list her as residing at Madison, although two of them bear notations indicating that her mailing address was in New York city. A separation agreement, prepared in May, 1935, but not signed until October, 1935, recited that both parties were residents of Madison.

The following propositions are clearly established by the evidence:

(1) The defendant, although a citizen of Italy, was domiciled in New York at the date of his marriage in 1925. There is nothing to show a substantial connection with Italy, and the facts as to his residence at the time of his marriage and his mode of life thereafter indicate that he intended New York to be his permanent home. The plaintiff has sustained the burden of showing that in 1925 the defendant's domicile of origin had ceased and that his new domicile of choice was New York.

Immediately upon the marriage the plaintiff's domicile, no matter where it may have been previously, became that of her husband — New York city (Restatement of the Law of Conflict of Laws, § 27; *Hunt* v. *Hunt*, 72 N. Y. 217, 242; writ of error dismissed, 131 U. S. Appendix, p. clxv; *Matter of Daggett*, 255 N. Y.

243; *Matter of Ringling*, 143 Misc. 746. See *Matter of New York Life Ins. & Trust Co.*, 139 N. Y. Supp. 695, 710; affd., 157 App. Div. 916; affd., 209 N. Y. 585), and continued to follow his at least until the parties separated in June, 1935, or until the separation agreement was signed in October, 1935.

There is no evidence that there was any change in defendant's domicile from the time of his marriage, at least until the time he left for Nevada. Although his life was migratory and he resided in many places, defendant never intended to make his home in any of the places he was temporarily visiting. On the contrary, all the evidence bearing on his habit of life, including almost all his declarations, point to an intention to make his permanent home in New York.

(2) Apart from her domicile by marriage, the acts and conduct of the plaintiff show that since 1925 she intended to and did in fact make New York her permanent home. The evidence submitted to the contrary consists of declarations of the plaintiff herself that her residence was Madison and of visits to her parents' home in Madison.

Most of the declarations of residence are ambiguous and of little probative value. For example, plaintiff's tax returns were made on property she owned in Madison, and it was natural to give an address within Connecticut where mail could reach her, though her actual residence was elsewhere. It is also clear that plaintiff's business affairs were handled for her by her mother, who was closely identified with Madison, and at least some of the returns were filled out and signed for her by her mother. Some of plaintiff's driving licenses, we have seen, bore notations as to her New York residence. The declaration of residence in the separation agreement was clearly erroneously made by an attorney who had done some work in Connecticut for the plaintiff, for, although it recites that both parties were residents of Madison there is no substantial evidence that defendant was ever a resident of that place. The statements of residence contained in the passport applications were made under circumstances that do not entitle them to controlling weight.

Ambiguous declarations such as these, when taken from their setting, may assume an unwarranted significance. Although they are to be considered with all the other circumstances, they must yield to conduct, which forms a sounder basis for the interpretation of intention. Acts are generally regarded as more important than declarations in determining intention. " Against conduct, talk has little weight." (*Matter of Fischer*, 151 Misc. 74; affd., 243 App. Div. 685; leave to appeal denied, 267 N. Y. xxxviii; *Dupuy* v.

*Wurtz, supra; Matter of Trowbridge, supra; Matter of Harkness,* 183 App. Div. 396; *Curtis* v. *Curtis,* 185 id. 391; *Matter of Morgan,* 176 id. 909; *Matter of Johnston,* 161 Misc. 131.) Defendant urges that the failure to ask plaintiff on the trial what her intention was is fatal. Such a direct question was not only unnecessary, since her whole testimony was designed to indicate her intention, but would have little probative force as compared to her actual conduct.

An analysis of the marital history of this plaintiff, living here in apartments furnished with her and her husband's belongings, is convincing that she was a New Yorker in spirit and practice. Madison was regarded by her merely as a convenient spot to store her possessions while she traveled about or when she had no use for them in New York. She also considered it a good place to receive mail, particularly in connection with the transactions involving her Connecticut property, and to spend vacation periods. There is nothing to show she ever resided there with her husband for any long period or regarded it as her home.

(3) The plaintiff is domiciled in New York at the present time and was when the action was begun in June, 1937. No matter what defendant's domicile was in June, 1937, plaintiff had the right to maintain a separate domicile of her own from the time of the separation in June, 1935, and certainly from the time the separation agreement was signed in October, 1935. (Restatement of the Law of Conflict of Laws, § 28; *Licht* v. *Licht,* 88 Misc. 107; *Matter of Crosby,* 85 id. 679; *Matter of Florance,* 54 Hun, 328; appeal dismissed, 119 N. Y. 661.) From the time of the separation of the parties the plaintiff continued to maintain her independent domicile in New York city.

(4) The defendant was also domiciled in New York when the action was commenced. The only change in defendant's domicile that could possibly have taken place occurred when he went to Nevada. Yet the evidence is convincing that the change was merely apparent and colorable and made only to secure a divorce. At the time he left for Nevada he asked for and obtained a leave of absence of about eight weeks in order to go there and get his divorce. In a letter to a friend, written from Reno, Nev., he writes of his residence there as a " holiday " and discusses his intention to return to work in New York. This uncontradicted evidence clearly shows that no change in defendant's New York domicile ever took place.

From all the foregoing it is clear that the plaintiff has met the residential requirements of section 1162 of the Civil Practice Act entitling her to maintain this action for separation in our courts. Both parties having been domiciled in the State when the action was commenced, the action comes within subdivision 1 of section

1162. (*Bierstadt* v. *Bierstadt*, 29 App. Div. 210. See *Prevost* v. *Prevost*, N. Y. L. J. May 16, 1936, p. 2519.) The plaintiff, being domiciled in New York when the action was begun, and both parties having been domiciled in this State for at least one year, plaintiff has brought her action within subdivision 3 of section 1162.

The next question is the effect of the separation agreement between the parties, which was prepared in May, 1935, but did not go into effect until it was signed in October, 1935. That agreement does not constitute a bar to the maintenance of this action.

The agreement makes no provision for the support of plaintiff and obligates her to make " no claim against the husband for support and maintenance for herself," nor to " contract any debt, charge or liability whatsoever, for which the husband or his property or estate shall or may be or become liable or answerable," and to " save him free and harmless from any and all debts or liabilities which may hereafter be incurred by her." All the terms of the agreement were to continue notwithstanding any future dissolution of the marriage by divorce, and plaintiff, in the event she was to seek a divorce, was to make no claim for alimony or any other allowance. The purpose of these provisions was clearly to relieve the defendant of his obligation of support; they are contrary to section 51 of the Domestic Relations Law, and render the agreement void. (*Mabbett* v. *Mabbett*, 197 App. Div. 654; *Gewirtz* v. *Gewirtz*, 189 id. 483; *Reischfield* v. *Reischfield*, 100 Misc. 561.) Moreover, the evidence showed that defendant failed to perform faithfully the provisions regarding the support of his child, and plaintiff availed herself of the right given her by the agreement and by law to terminate the agreement. (*Crim* v. *Crim*, 176 N. Y. Supp. 68; *Breiterman* v. *Breiterman*, 239 App. Div. 709; *Scheinkman* v. *Scheinkman*, 64 Misc. 443.)

The divorce obtained in Nevada and the subsequent remarriage of the defendant will not be recognized as valid in this State. In December, 1936, and January, 1937, the defendant, while residing in New York city, asked plaintiff to divorce him or to permit him to get a divorce. Plaintiff refused and would not acquiesce in any divorce or divorce proceedings. Defendant thereupon stated that he would go to Nevada anyhow and get a divorce from her there. He did go to Nevada solely for the purpose of obtaining a divorce. Plaintiff failed to appear in the Nevada action, and the attempted service upon her by publication and mailing was insufficient under our law to give the Nevada courts jurisdiction over the action. (*Haddock* v. *Haddock*, 178 N. Y. 557; affd., 201 U. S. 562; *Olmsted* v. *Olmsted*, 190 N. Y. 458; affd., 216 U. S. 386; *Ball* v. *Cross*, 231 N. Y. 329; *Greenberg* v. *Greenberg*, 218 App. Div. 104, 112.)

A day after he obtained the Nevada decree defendant married another woman. The defendant and this woman must have known, or could readily have ascertained, that in this State the divorce would be treated as invalid, and the subsequent marriage would not be recognized here. They deliberately ignored our law and closed their eyes to the effect of their conduct in this State. So far as this jurisdiction is concerned, at any rate, they must now suffer the consequences.

The allegations of cruelty and non-support are fully established by the evidence submitted at the trial. (Civ. Prac. Act, § 1161, subds. 1, 4; *Hofmann* v. *Hofmann*, 232 N. Y. 215.) Plaintiff is, therefore, entitled to a decree of separation and to the custody of her child, with right of visitation on the part of the defendant.

There is no evidence before me from which the capacity of the defendant to pay alimony can be determined. That question will, therefore, be reserved in the decree. It is unnecessary to order a reference at this time on the amount of alimony to be awarded. Plaintiff may petition the court at any time to amend the decree so far as alimony is concerned. (Civ. Prac. Act, § 1170; *Fox* v. *Fox*, 263 N. Y. 68.) Indeed, under the *Fox* case even a reservation in the decree is no longer essential to continue the jurisdiction of the court over the subject-matter of alimony.

There remains to be considered the question as to whether the plaintiff at this time is also entitled to a declaratory judgment defining her marital status. Since the decree of separation determines that status no declaratory judgment is now necessary. Being a resident of the State when this action was commenced, the plaintiff could sue in our courts for a declaratory judgment. She would be entitled to a judgment declaring the Nevada decree to be invalid and adjudicating her to be the lawful wife of the defendant if her marital status was not fully protected by the decree of separation. (*Baumann* v. *Baumann*, 222 App. Div. 460; approved, 250 N. Y. 382; *Lowe* v. *Lowe*, 265 id. 197; *Perrin* v. *Perrin*, 140 Misc. 406.)

Settle findings of fact, conclusions of law and decree on notice. Exception to the defendant.