ELIZABETH D. FOOTE, Plaintiff, v. EDWARD W. FOOTE, Defendant.

Supreme Court, Equity Term, Oneida County, January 27, 1948.

*Walter C. Rabenstein* for plaintiff.

*Cornelius Donohue* for defendant.

ZOLLER, J. Plaintiff has brought this action in which she seeks a decree of divorce from the defendant. The parties were married in the city of Utica, Oneida County, State of New York, on January 19, 1940. Plaintiff was born in said city of Utica and at the time of the trial in September, 1947, was thirty-one years of age. Defendant was born in the city of Little Falls, Herkimer County, New York, and at the time of the trial was also thirty-one years of age. Both had been residents of Utica for many years. A child of their marriage was born on August 30, 1944, in the city of Utica, her name being Sharon Elizabeth.

It was conceded on the trial by defendant's counsel that defendant was married to one Joyce M. Sharpe on April 20, 1946, in Rossville, Georgia, and that thereafter they lived together as husband and wife.

Defendant has interposed in his answer as a complete defense to plaintiff's action against him that on April 18, 1946, in an action brought against his wife, this plaintiff, he was granted a decree of divorce in a Juvenile and Domestic Relations Court of Knox County, Tennessee, and there was offered in evidence, and received, on the trial a certified copy of said decree from which it appears that the grounds upon which said decree was granted were that the defendant in that action, the plaintiff here, was guilty of cruel and inhuman treatment and conduct towards her husband, this defendant, the plaintiff in the

Tennessee action, such as to render cohabitation unsafe and improper.

Defendant did not appear and testify on this trial, relying solely upon his defense that he had divorced the plaintiff in the State of Tennessee.

From the testimony of the plaintiff and her mother who was sworn as a witness in her behalf the following undisputed facts appear: In November, 1940, some ten months following their marriage, plaintiff and her husband went to California where they remained until April 1941, and then returned to Utica, and were there until November, 1942. At that time plaintiff went to Missouri with her parents, her father being a colonel in the United States Army, and defendant went to New York City, where plaintiff joined him in December, 1942, and where they both lived until March, 1943. Defendant is a civil engineer by profession and from New York City he and the plaintiff went to Knoxville, Tennessee, where he was to be employed at the Oak Ridge atomic bomb plant or project. In September of that year he was inducted into military service of the United States, at which time plaintiff returned to her parents' home in Utica and there remained until after the birth of her little daughter on August 30,. 1944. As soon as she was able, and some ten weeks after her daughter was born, plaintiff went back to her husband in Knoxville, where she lived with him for about a month. In December, 1944, she returned to her parents' home in Utica where she has since lived.

· Plaintiff testified that her husband had requested her to return home because " he didn't believe he could swing it financially "; that there was considerable discussion about her returning home and her telling the defendant that her father was very ill in Utica with a heart condition and that she didn't believe her parents' home in such circumstances was any place for a small baby, as she had been told that her father required absolute quiet; that her husband insisted that she return home and that one night he came to their apartment and told her that he had airplane reservations for her and their daughter; that both she and her husband had a telephone talk with her mother at Utica, in which, as testified to by plaintiff's mother, defendant told her that he was sending her daughter and the baby home the next day by plane, although she asked him .not to do it because her husband was very ill at that time; that the defendant said he thought it was better that they return to Utica because he was not satisfied with the

apartment which they had in Knoxville and that it was hard to meet expenses. Plaintiff's mother further testified that although she repeatedly asked him to postpone the trip until her husband's health was better, defendant said, '' I think it will have to go as it is Mom, as I have already made a reservation for them and have the tickets for them to go on the plane '', and that the only reasons he gave were that he could not make it a go financially and wasn't satisfied with the apartment.

In August, 1945, defendant came to Utica on a furlough for about a week and stayed with the plaintiff at her parents' home, No. 1205 Kemble Street. In May, 1946, plaintiff received a notice from the government to the effect that her husband was no longer in military service, having been discharged on or about April 4, 1946. She has not seen her husband since August, 1945, and first learned about the decree of divorce which he had obtained in Tennessee in June, 1946, through a letter which she received from him, in which he told her that he had obtained a decree of divorce in Tennessee. Plaintiff testified that she had received nothing in the mail or from any court or person in the way of an official notice that a divorce action had been commenced and a decree obtained, and that she had not been served with a copy of any summons and/or complaint or other notice, and was first made aware of the contents of the decree when a copy was obtained for her by her counsel after she had received said letter from her husband.

The Tennessee decree awards this plaintiff the custody of her daughter. Defendant, however, has failed to contribute towards the support and maintenance of his daughter since his discharge from the service in April, 1946, with the exception that he forwarded a small sum to the plaintiff in November, 1946, nor has he sent any birthday or Christmas gifts to her.

The parents of the defendant live in Utica, N. Y., to which city they moved from Little Falls, N. Y., some years ago following the birth in that city of the defendant. It was in Utica that these young people grew up and were married. His first employment after his marriage was in California where he and his wife lived until their return to Utica where they remained for about a year and a half and until defendant obtained employment in the city of New York on what was commonly known as the Manhattan Project. From there they went to Oak Ridge, Tennessee, where he was employed, as above stated, on the atomic bomb project.

Prior to his induction into the army, it seems that defendant was employed by the Government as a civilian and also was so employed after his discharge. He was in military service from September, 1943, to April, 1946, and during all that period was employed at Oak Ridge, Tennessee.

He obtained a Tennessee decree of divorce on April 18, 1946, about two weeks after his discharge from military service. Thus it appears that for at least two years prior to April, 1946, defendant was in military service stationed at Oak Ridge.

The statute law of Tennessee requires that a person must have resided in that State two years before the filing of the bill of complaint. The question here presented, therefore, is whether or not the defendant as the petitioner in the Tennessee action had a bona fide domicile in that State, as distinguished from a mere residence therein.

Nowhere in the record nor in defendant's answer is there anything which discloses that defendant had an intention of making his permanent home in the State of Tennessee.

"Before a place of abode will be considered a person's 'domicile,' the person must actually reside there with the fixed intention of making it his permanent home. Both residence and intention are essential". (*Pignatelli* v. *Pignatelli,* 169 Misc. 534, 537.)

"As domicile and residence are usually in the same place, they are frequently used, even in our statutes, as if they had the same meaning, but they are not identical terms, for a person may have two places of residence, as in the city and country, but only one domicile. Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home. Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one's domicile.

" * * * The question is one of fact rather than law, and it frequently depends upon a variety of circumstances, which differ as widely as the peculiarities of individuals. * * * In order to acquire a new domicile there must be a union of residence and intention. Residence without intention, or intention without residence is of no avail. Mere change of residence although continued for a long time does not effect a change of domicile, while a change of residence even for a short time with the intention in good faith to change the domicile, has that effect. * * * Residence is necessary, for there can be no domicile

without it, and important as evidence, for it bears strongly upon intention, but not controlling, for unless combined with intention it cannot effect a change of domicile. * * * There must be a present, definite and honest purpose to give up the old and take up the new place as the domicile of the person whose status is under consideration. * * * Motives are immaterial, except as they indicate intention. A change of domicile may be made through caprice, whim or fancy, for business, health or pleasure, to secure a change of climate, or a change of laws, or for any reason whatever, provided there is an absolute and fixed intention to abandon one and acquire another and the acts of the person affected confirm the intention. * * * No pretense or deception can be practiced, for the intention must be honest, the action genuine and the evidence to establish both, clear and convincing. * * * A temporary residence for a temporary purpose, with intent to return to the old home when that purpose has been accomplished, leaves the domicile unchanged ". (*Matter of Newcomb,* 192 N. Y. 238, 250, 251 [VANN, J.].)

It has been held that a temporary residence in the District of Columbia for an indefinite period while in Government service is not ordinarily enough in and of itself to deprive the Federal employee of his domicile of origin. (*Dalton* v. *Dalton,* 270 App. Div. 269, 272, and cases cited.)

Evidently defendant's divorce action in Tennessee was commenced by the publication of the summons in that State, pursuant to the law thereof and the decisions of the courts thereof. However, nothing was presented to this court regarding either the law and/or decisions or the facts which warranted service by publication. Whether a proper affidavit was filed or a proper effort made to ascertain the whereabouts of this plaintiff at the time the Tennessee action was brought and whether any essential facts were concealed from the Tennessee court are questions left entirely to conjecture. Manifestly, this defendant knew the whereabouts of his wife at the time he brought his action in Tennessee. Service of a summons by publication, if permissible by local law, satisfies the requirement of due process where it is reasonably calculated to give the defendant notice of the proceedings and an opportunity to be heard. (*Milliken* v. *Meyer,* 311 U. S., 457; *Williams* v. *North Carolina,* 317 U. S. 287.) In order, however, to make a divorce valid, even if granted in the State of domicile, there must be notice to the defendant either by service of process or, if the

defendant is a nonresident, by such publication or other constructive notice as is required by the law of the State. (*Thompson* v. *Thompson,* 226 U. S. 551.) If the notice is published against the defendant without making such effort as the local law requires to serve process upon the defendant within the State, the divorce is void for want of jurisdiction. (*Cheely* v. *Clayton,* 110 U. S. 701.)

It seems to me that it was incumbent upon this defendant to satisfy this court that the divorce action which he commenced against this plaintiff in Tennessee was begun strictly in compliance and conformity with the requirements of the law of the State of Tennessee. This he failed to do, relying solely both in his answer and on the trial on his defense that on April 18, 1946, a decree of absolute divorce was entered in the Court of Juvenile and Domestic Relations for Knox County, Tennessee, in his favor and against this plaintiff, and that said court had jurisdiction of the parties.

In *Lefferts* v. *Lefferts* (263 N. Y. 131), it was held that the validity of a Nevada decree of divorce granted without personal service on the defendant may be impeached by proof that the plaintiff was not domiciled in Nevada; and that full faith and credit might be denied to a foreign decree purporting to adjudicate the marital status of a plaintiff who, it is shown, was not domiciled in the State of the forum, and a defendant who resides in New York and who was not personally served with process and did not appear in the action.

Chief Judge LEHMAN, writing for the court in *Matter of Holmes* (291 N. Y. 261), said at pages 272, 273: " We have found no case in which this court has heretofore attempted to define the scope of the rule that a judgment of a sister state granting the plaintiff a divorce from a spouse not domiciled in that state nor appearing in the action nor personally served with process there imports that the court had acquired jurisdiction to render a valid judgment *in rem* changing the status of the plaintiff. In many decisions the court has, however, assumed the existence of a presumption, in the absence of evidence to the contrary, that the court had jurisdiction to render judgment, though, doubtless, the validity of the judgment may be impeached by extrinsic evidence."

The courts of this State are not required to grant full faith and credit to a decree of divorce of another State obtained on constructive service when neither spouse was domiciled in the granting State and they have the right to pass upon the *bona*

*fides* of the residence of the parties. (*Matter of Holmes,* 291 N. Y. 261, *supra; Matter of Bingham,* 265 App. Div. 463, leave to appeal denied, 290 N. Y. 929; *Solotoff* v. *Solotoff,* 269 App. Div. 677.) And though the validity of such a decree may be attacked by a spouse domiciled in New York State who never was in the foreign State, the foreign judgment will be given full faith and credit until it is impeached by evidence which establishes that the foreign court had no jurisdiction. (*Matter of Holmes, supra; Dalton* v. *Dalton, supra.*) Such a " decree of divorce is a conclusive adjudication of everything except the jurisdictional facts upon which it is founded, and domicil is a jurisdictional fact." (*Williams* v. *North Carolina,* 325 U. S. 226, 232.) The court further said in the *Williams* case (*supra,* pp. 233–234) : " The fact that the Nevada court found that they were domiciled there is entitled to respect, and more. The burden of undermining the verity which the Nevada decrees import rests heavily upon the assailant. But simply because the Nevada court found that it had power to award a divorce decree cannot, we have seen, foreclose reexamination by another State."

As I have already pointed out, the record is barren of any proof which justifies the inference that the defendant went to Tennessee with the intention of making it his permanent abode or changing his domicile from the State of New York to the State of Tennessee. On the contrary, his action in compelling his wife to return to Utica and the reasons which he gave therefor, it seems to me, warrant the inference that he was not then intending to maintain a home in Knoxville. Was there, in fact, some other reason which impelled him to take this action?

The defendant was personally served with a copy of the summons and complaint in this action on November 23, 1946, at Oak Ridge Hospital, Oak Ridge, Anderson County, Tennessee, by a duly authorized acting deputy sheriff of that county. In the affidavit of service, verified December 23, 1946, attached to the original summons and complaint and filed therewith in the Oneida County Clerk's Office on January 6, 1947, appears the following: " I asked him if he was Edward W. Foote and he said he was. He also, in response to questions, said his wife in Utica was named Elizabeth D. Foote, but that he obtained a divorce from her in April, 1946, at Knoxville Tennessee, and that he married his present wife, Joyce Foote, on April 20th, 1946, at Rossville, Georgia. They have a child whose name is Mairietta Foote who seems to be about three years of age. Thus I know that the person I served is the defendant is this action."

Defendant obtained his Tennessee divorce on the grounds of cruelty. In fairness to this plaintiff it should be noted that upon the trial of this action she testified that she did not treat her husband cruelly or inhumanly in any respect and that her conduct toward him was that of a dutiful and loving wife.

My conclusion, on the record before me, is that the defendant was not a domiciliary of the State of Tennessee before his bill of complaint was filed and that the lack of domicile deprived the court of that State of jurisdiction and for that reason this court is not violating the full faith and credit clause of the Federal Constitution in refusing in this action to give effect to the Tennessee divorce decree of April 18, 1946. (*Matter of Lindgren*, 293 N. Y. 18; *Forster* v. *Forster*, 182 Misc. 382.)

These parties are in a court of equity and it has been very aptly and appropriately said that " The mere fact that a husband has secured a divorce from his wife gives ground for suspicion at least of the virtue and fidelity of the latter, on the part of the general public, in the domicile of both parties, who are unacquainted with the infinite variety of causes for which divorces may be granted in other jurisdictions and have heard only of the usual statutory ground for divorce in this State. A wife who has given no ground for divorce in this State where she and her husband have always lived during their married life, should not be exposed to the humiliation and doubt as to her status raised by a judgment of divorce in another State, even if fraudulently obtained and invalid here." (*Greenberg* v. *Greenberg*, 218 App. Div. 104, 115–116; also quoted in *Goldstein* v. *Goldstein*, 283 N. Y. 146, 153–154.)

Plaintiff may have a decree of divorce and is awarded the sole custody of Sharon Elizabeth, the daughter of these parties, and although the plaintiff has not requested any support or maintenance for herself or her daughter, the decree is to provide that the defendant is to pay towards the support and maintenance of said Sharon Elizabeth the sum of $15 a week and in addition thereto is to pay all necessary and reasonable medical, dental and hospital bills incurred in her behalf. Plaintiff may also have the costs of this action.

A decree may be submitted accordingly.