120 So.2d 797 (1960)
Benjamin COLBY, Appellant,
v.
Sarah P. COLBY, Sometimes Known As Sarah P. Appleby, and Scott Appleby, Appellees.
No. 1379.
District Court of Appeal of Florida. Second District.
May 20, 1960.
*798 Mabry, Reaves, Carlton, Fields & Ward, Tampa, for appellant.
Dart & Bell, Sarasota, for appellees
KANNER, Judge.
The circuit court of Sarasota County entered a final decree dismissing the amended complaint of Benjamin Colby, hereinafter referred to as "Colby", he having declined to further amend. Colby has appealed from that decree, urging that the amended complaint is adequate to entitle him to the relief sought under the declaratory decree act which he has invoked, Chapter 87, Florida Statutes, F.S.A.; and likewise that, independent of the declaratory statute, his complaint justifies equitable relief.
According to the factual environment of this dispute as revealed in the amended complaint, the plaintiff, Colby, is a resident and citizen of Maryland; while the defendant, Sarah P. Colby, otherwise known as Sarah P. Appleby, hereinafter referred to as "Sarah", is legally also a resident of Maryland now residing in Sarasota, Florida, and the defendant, Scott B. Appleby, hereinafter referred to as "Appleby", formerly a resident of Washington, D.C., is now a resident of Florida. Further averments of the amended complaint are that Appleby and Sarah claim to be husband and wife and are living together as such; that Colby and Sarah were husband and wife and that Sarah, in 1955, secured a Nevada divorce decree which is invalid because of lack of jurisdiction, since neither Sarah nor Colby was a resident of Nevada and since Colby was not served with process in Nevada, nor did he appear in the suit; that Colby subsequently attacked the Nevada divorce decree in a Maryland suit which resulted in a decree declaring the Nevada decree to be invalid for lack of jurisdiction and granting Colby a divorce a mensa et thoro because of abandonment by Sarah; that Sarah was served with process and defendant the Maryland suit on the basis that the marriage relationship had been terminated through the Nevada divorce decree and, therefore, the Maryland court had no jurisdiction to grant the divorce sought by Colby; that the Court of Appeals for the State of Maryland, upon appeal by Sarah, affirmed the lower court via the case of Colby v. Colby, 1958, 217 Md. 35, 141 A.2d 506; that during the pendency of the Maryland suit, Sarah and Appleby went through a marriage ceremony in Nevada, illegal for the reason that the Nevada decree of divorce was void.
The complaint asserts that Sarah and Appleby, by living together as husband and wife, are necessarily denying that Colby and Sarah are husband and wife; and that the status of Appleby and Sarah as purported husband and wife is inconsistent with the husband and wife relationship of *799 Colby and Sarah. It is stated that, in effect, there exists a controversy between the parties as to marital status as a result of the relationship between Sarah and Appleby.
Colby alleges that, following the adverse Maryland decree, Sarah and Appleby fled from Maryland to Massachusetts; that litigation was there instituted by Colby for similar relief as sought here and is still pending; and that after being served in the Massachusetts suit, they moved to Florida.
It is also averred that the Maryland decree provided that each of the parties should live chastely during their separation and that the custody of the then minor children was given to Sarah. Colby complains that Sarah has disregarded the Maryland decree and has continued to live in a bigamous relationship with Appleby and thus has created a bad influence upon the eighteen year old daughter of Sarah and Colby, and further, that Sarah and Appleby have prejudiced this daughter against Colby. Stating that he did not believe Sarah is consciously leading a bigamous life, Colby alleged that she has been victimized by Appleby and that she continues to be deceived as to the validity of the Nevada decree of divorce. Additionally, there are claimed property rights involved; these will be considered later in this opinion.
Colby then prayed that the court accord full faith and credit to the Maryland decree and that such decree be established and enforced in all respects as a Florida court decree; or in the alternative that the court enter its own decree declaring that Colby and Sarah are husband and wife, that Sarah and Appleby be restrained from holding themselves out as husband and wife and from living together in that relationship, and also that Sarah be enjoined from using the name, Appleby, or any married name other than that of Colby.
A motion to dismiss was directed against the amended complaint. Several grounds were stated, among which it was asserted that a cause of action is not stated against Sarah or Appleby or either of them, and that no property rights are involved and that the relief sought is not such as could be properly granted under the declaratory act, or for any reason or cause by any Florida court.
In analyzing Colby's assertion that he is entitled to invoke the declaratory decree statute, we see that the pith of his action is to obtain a declaration of the marital status in Florida of himself and Sarah. The object of the declaratory act is to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations. Section 87.11, Florida Statutes, F.S.A.; and 9 Fla.Jur., Declaratory Actions, section 5, pp. 549-550. There must be a bona fide dispute between the adversaries as to a present justiciable question. Bryant v. Gray, Fla. 1954, 70 So.2d 581; and Local No. 234, etc. v. Henley & Beckwith, Inc., Fla. 1953, 66 So.2d 818. The test to activate jurisdiction under the act is whether or not the moving party shows that he is in doubt as to the existence or non-existence of some right, status, immunity, power, or privilege. Ready v. Safeway Rock Co., 1946, 157 Fla. 27, 24 So.2d 808. Nor can the act be invoked by a mere colorable dispute to obtain the opinion of the court upon a question of law where, in fact, there is no real controversy. Lieber v. Lieber, Fla. 1949, 40 So.2d 111. Thus it is seen that the dispute must be justiciable in the sense that it is based upon some definite and concrete assertions of right, the contest thereof involving the legal or equitable relations of parties having adverse interests with respect to which the declaration is sought.
Colby predicates his right to relief upon the Maryland decree, contending that a justiciable controversy exists as to his marital status due to Sarah's relationship with Appleby and because of her allegedly erroneous belief in the efficacy of the void Nevada decree. He is making no attack here upon the validity of any decree. Instead, he subscribes to the fact that the *800 Maryland decree is in all respects valid, raising no question as to doubt or uncertainty regarding any aspect of the Maryland decree of itself. His grievance is that after the Nevada divorce decree, Sarah married Appleby in Nevada before the rendition of the Maryland decree and afterwards continued living with him, for a time in Massachusetts and presently in Florida.
We have just indicated, essentially, principles required in order for one to invoke the declaratory decree act and have also indicated the basis upon which Colby relies to fulfill the test necessary to bring him within the scope of the statute. However, in addition to the principles already set forth, there is a further important aspect which must be considered, due to the contents of the amended complaint and the relief sought. That aspect is that a purpose of statutes affording declaratory relief is to adjudicate the rights of parties who have not theretofore had those rights determined. Travelers Ins. Co. v. Wechsler, 1940, 34 F. Supp. 721, and Phelps County v. City of Holdrege, 1937, 133 Neb. 139, 274 N.W. 483. For domestic relations cases holding that a declaratory judgment as to marital status is unnecessary and is precluded by a prior judgment determining such status, see Leitman v. Leitman, 1954, 284 App.Div. 959, 135 N.Y.S.2d 518; Metlis v. Metlis, Sup. 1951, 104 N.Y.S.2d 407; Pignatelli v. Pignatelli, 1938, 169 Misc. 534, 8 N.Y.S.2d 10; Pantelides v. Pantelides, Sup. 1945, 54 N.Y.S.2d 841; and Garvin v. Garvin, 1953, 306 N.Y. 118, 116 N.E.2d 73. Generally, questions which have already been adjudicated by a court having jurisdiction of the subject matter and the parties cannot subsequently, between such parties and their privies, constitute a justiciable controversy within the meaning of declaratory judgment acts. See Flanigan v. Security-First Nat. Bank, D.C. 1941, 41 F. Supp. 77; and Shearer v. Backer, 1925, 207 Ky. 455, 269 S.W. 543. Also, see generally the following related authorities: Walker v. Walker, 1936, 132 Ohio St. 137, 5 N.E.2d 405; Koenig v. Koenig, Mo. App. 1945, 191 S.W.2d 269; Shick v. Goodman, 1939, 333 Pa. 369, 5 A.2d 363; Greasy Brush Coal Co. v. Hayes, 1942, 292 Ky. 517, 166 S.W.2d 983; Anderson, Declaratory Judgments, 2nd ed., Vol. 2, section 459, pp. 1086, 1087, 1088, and 1091; 26 C.J.S. Declaratory Judgments § 38 a, p. 116; and 16 Am.Jur., Declaratory Judgments, section 23, pp. 295-296.
A Florida case bearing upon the problem here is that of deMarigny v. deMarigny, Fla. 1949, 43 So.2d 442, 444. That case involved a declaratory suit brought by a wife seeking an annulment in another state, challenging a prior domestic decree of divorce entered between her husband and his former wife. The complaint attacked the prior decree on the grounds that fraud had been perpetrated on the circuit court and that the court did not acquire jurisdiction of the parties or the subject matter in the prior divorce suit. It was prayed that the court determine the force and effect of the decree of divorce and adjudicate whether the decree was valid or a nullity. Upon motion of the defendant, the complaint was dismissed.
The Supreme Court upheld the dismissal decree of the chancellor, holding that a declaratory suit was inappropriate. The following portions of the court's opinion are pertinent to the consideration of the instant appeal:
"The only tenable exception to the rule that a declaratory judgment proceeding is not an appropriate method of questioning a final judgment or decree (valid on the face of the record) is in case the judgment or decree has become the source of definite rights and is unclear or ambiguous. See Borchard on Declaratory Judgments, Second Edition, page 356. The principal objective of the legislature in adopting the act providing for declaratory judgments or decrees was to establish a means whereby one might obtain a judicial declaration of rights never before determined but in no sense was it the *801 legislative purpose to enable such person to secure a determination as to whether rights previously adjudicated had been properly resolved. * * *
"Our view appears to be supported by the weight of authority throughout the country as well as by American Jurisprudence, Vol. 16, pages 295, 296, Section 23, which we quote with approval: `The act is not intended to elucidate or interpret judicial decrees or judgments already entered, or to modify or declare rights thereunder.' * * *

"We have disposed of her first contention by holding that our declaratory decree statute does not, in any event, contemplate a declaration of one's status or rights, under an unambiguous decree of a court of competent jurisdiction which was acquired or were developed subsequent thereto." (Emphasis supplied.)
Concededly the deMarigny case is factually dissimilar from the present case since it involved an attempt to attack collaterally a domestic divorce decree, whereas the case here involves no attack upon a decree but seeks to declare the marital status previously adjudicated. However, the emphasized portions of the deMarigny opinion indicate the adherence by our Supreme Court to principles applicable to the present appeal.
Another case having a bearing in principle is Frix v. Beck, Fla.App. 1958, 104 So.2d 81, wherein a declaratory decree was sought with respect to orders of a deputy commissioner in a workmen's compensation matter. There again the facts were unlike the present case, since the attempted suit was in the nature of review of prior orders. However, the court, quoting from 16 Am.Jur., Declaratory Judgments, section 23, pp. 295-296, and also quoting the supplement thereto, cited general authority which has set forth the applicable principle. As quoted by the third district court of appeal, this principle is that questions which have already been adjudicated by a court having jurisdiction of the subject matter and the parties cannot thereafter be the subject between such parties and their privies of a justiciable controversy as contemplated by the declaratory judgment act.
The purport of the Maryland decree is to hold the Nevada decree void, to place the custody of the minor children with Sarah, and to grant a divorce decree a mensa et thoro to Colby. We have seen that the gist of Colby's contention, primarily, for declaration of marital status rests upon the personal behavior of Sarah through her marriage to Appleby and the influence which Appleby exercises over her, notwithstanding the Maryland decree.
It is incumbent upon Colby as the moving party to show a bona fide dispute as to a present justiciable question or that he is in doubt as to the existence or non-existence of some right, status, immunity, power, or privilege. No doubt or uncertainty is shown to exist on Colby's part as to his rights. Rather, the Maryland decree, on the face of the record, appears to be clear and unambiguous; and the question as to marital status has been litigated and adjudicated in the Maryland courts, as shown by the complaint and the exhibits thereto. Therefore, on the face of the complaint, no declaration of marital status is necessary.
Next we turn to Colby's assertions that he is entitled to relief due to certain property involvements. He states that the three children of himself and Sarah are beneficiaries of a trust fund having a value of more than $150,000 administered by him; that this is a joint trust which could, with the consent of all interested parties, be converted into separate and equal trusts for the benefit of each child; that such change would result in substantial tax savings, approximately $7,000 in 1958; that he has written Sarah suggesting that the trust be changed but has received no reply; that Colby is unable to communicate with Sarah and that she refuses to cooperate due to the opposition and interference of Appleby; *802 and that Colby believes Sarah otherwise would cooperate in bringing about the change in the trust.
It is also alleged that Colby owns a farm in Maryland in which Sarah holds a dower interest; that Colby has an opportunity to exchange advantageously a portion of the land for adjoining land; that he cannot convey good title unless Sarah releases her dower interest and that because of his inability to communicate with her and because she has assumed the name of Appleby, Colby is unable to secure release of her dower interest; and that he believes, if the pretended marriage of Sarah and Appleby were judicially declared void, then she would cooperate as to the exchange of lands.
No justiciable question is created nor alleged with respect to Sarah's admitted dower interest nor as to the tax saving on the trust fund. Although the declaratory act provides under section 87.05, Florida Statutes, F.S.A., for relief by way of anticipation with respect to any act not yet done or any event which has not yet happened, the allegations as to property involvements show no acts as to which a decree would be binding upon Sarah. Colby is speculating that the things mentioned would be done if there were a declaration of his marital status. He asserts that he believes that Sarah would cooperate and consent in bringing about changes in the trust fund so as to effect tax savings, and he also says that he believes that she would cooperate as to exchanging certain lands by releasing her dower, but the courts cannot compel her to assume a more cooperative attitude with regard to these things. Paraphrasing the language of the Supreme Court in the case of Donovan v. Schott, Fla. 1952, 58 So.2d 847, 849, there can be no assurance that even if the marital status is again adjudicated, Colby would be the beneficiary of Sarah's future acts. There are in the allegations of the complaint no present nor future property rights which can be adjudicated between Colby and Sarah, and Colby's beliefs and desires form no basis for declaratory relief.
Without further extension of this opinion, we conclude that the amended complaint as set forth is insufficient to authorize relief under the declaratory act or equitable relief independent of it. The decree is affirmed.
Affirmed.
ALLEN, C.J., and SHANNON, J., concur.