132 So.2d 423 (1961)
Warner E. GRABLE, Appellant,
v.
HILLSBOROUGH COUNTY PORT AUTHORITY, a public corporate body; Hillsborough County Port District; Atlantic Coast Line Railroad Company, a Virginia corporation; and Atlantic Land and Improvement Company, a Virginia corporation, Appellees.
No. 2275.
District Court of Appeal of Florida. Second District.
August 18, 1961.
Laurens G. Jones and Oliver C. Maxwell, Tampa, for appellant.
Norman S. Brown and Ralph C. Dell of Allen, Dell, Frank & Trinkle, Tampa, for appellees.
KANNER, Judge.
Plaintiff, Warner E. Grable, sued under the declaratory judgment act, chapter 87, Florida Statutes, F.S.A., for determination of his rights and status as to sale of 29 acres of filled-in land by the defendant Hillsborough County Port Authority to defendant Atlantic Land and Improvement Company, a wholly owned subsidiary of the defendant Atlantic Coast Line Railroad Company. His appeal to this court is from a final decree through which the court dismissed the complaint with prejudice.
The complaint, answers, and stipulation of facts agreed upon by the parties for final determination by the chancellor on the merits comprised the record before the court. A standing to sue was asserted by the plaintiff on the ground that he is an elector and taxpayer in the port district. The complaint raised several questions concerning the status of the 29 acres, the propriety of certain actions by the port authority under the applicable statutes and administrative regulations, and the price of $50.00 per acre received for the land.
*424 The port authority was created by chapter 23338, Special Acts, Florida, 1945, to foster development of the port of Tampa and to improve and increase the flow of trade and commerce through the port and was later vested with title to the 29 acres in question as submerged land, as well as to other lands, by the Trustees of the Internal Improvement Fund. Attraction of new industries and encouragement of owners of private capital to invest in the area were to be major functions. Pursuant to legislative authorization of chapter 24578, Special Laws of Florida, 1947, the port authority promulgated a number of rules and regulations relative to filling, developing, or otherwise improving lands owned by it. These rules and regulations were adopted on March 19, 1957.
In September, 1958, the defendant railroad company and its subsidiary, the defendant land improvement company, applied for a permit to fill the 29 acres of land involved in this controversy. The port authority, which at the time was engaged in a detailed study of bulkhead lines, withheld action on the application because of the study. Despite lack of authorization, the defendant corporations filled the 29 acres of submerged land without a permit. Subsequently, after the filling had been accomplished, the port authority approved the application to fill and at the same meeting passed a resolution authorizing the sale of the 29 acres to defendant Atlantic Land and Improvement Company, which also owned the abutting uplands.
The filling operation had its impetus in requirement by the federal government that certain improvements be made as a condition precedent to expenditure of funds under the Tampa Harbor Authorization Act, which provided for the widening and deepening of Tampa harbor to a controlling depth of 34 feet. Improvement of the basic terminal facilities, to include the use of the 29 acres of land as a disposal area for the spoil removed through the dredging operation, was undertaken by defendant corporations at their own expense and under authorization of the United States Army Corps of Engineers, which issued a permit to them to fill this area. The port authority had approved in general the projected improvements in 1957. Defendant corporations had been negotiating with the National Gypsum Company with a view to leasing to it the land in question as a site upon which a six million dollar plant would be erected and operated by the prospective lessee. Cognizant of these negotiations, which, if successful, would result in attraction of a large new industry to the port area, the port authority sold the 29 acres to defendant Atlantic Land and Improvement Company at a price of $50.00 per acre, approving the sale by resolution passed at a meeting on June 29, 1960. A public hearing was held on August 22, 1960, for the purpose of receiving any objections from members of the public who might be affected. Advance notice of the purpose and nature of the meeting was published for thirty days. No objections to the sale were filed; and the transaction was consummated, with title being vested in defendant Atlantic Land and Improvement Company.
In his complaint, plaintiff questioned whether the 29 acres should have been considered submerged or emerged lands at the time of the conveyance to the defendant Atlantic Land and Improvement Company, since these had already been filled. He requested an adjudication of the precise nature of the land at the time of the sale. He continued by stating that the rules and regulations promulgated by the port authority had been ignored by it in the transaction between it and defendant corporations. The procedural irregularities pointed to by plaintiff were the failure of the attorney and engineer of the port authority to grant preliminary approval of the filling and sale of the 29 acres, the failure to procure a valuation by a qualified and disinterested appraiser, and the belated permission given defendant corporations to *425 fill after the filling had been completed. He concluded by attacking the consideration of $50.00 per acre paid by defendant corporations to the port authority, labeling it as grossly inadequate. Plaintiff alleged in the light of these contentions that he was entitled to a declaration of his rights and status and, in the event it was determined that any of his rights had been violated, that he was further entitled to supplemental relief as provided for in sections 87.01 and 87.07, Florida Statutes, F.S.A.
In dismissing plaintiff's complaint, the chancellor in his final decree determined that the sale of the area in question had been completed and consummated, the consideration paid, the deed of conveyance executed and recorded, and that the purchaser, defendant land improvement company, had been placed in possession. The court held that plaintiff was merely in search of judicial review of the port authority's action and that no right, status, or immunity of the plaintiff was involved in the proceeding. The chancellor found also that the declaratory judgment act cannot be used for review of the actions of the port authority or for the purpose of pointing out procedure to determine whether or not a person has a cause of action. The chancellor further decreed that no useful purpose would be served by the court's making answer to the questions propounded by plaintiff which are now moot.
Negotiations preparatory to the actual conveyance took place over an extended period of time. During that period, no protest was made to the port authority by plaintiff. After plaintiff filed action in the circuit court and while it was still pending, the public meeting heretofore referred to was called by the port authority for the receiving of any objections or protests by persons concerned. Plaintiff did not appear nor did he register any objections. The meeting had been properly advertised for 30 days in advance in accordance with requirements of the pertinent legislative enactment.
The filling of the submerged 29 acres took place while formal application was pending. Filling operations were executed by defendant corporations at their own expense as part of a project designed to help meet requirements for expenditure of federal funds on the Tampa harbor project mentioned. This was done by permit from the United States Army Corps of Engineers. The sale which plaintiff protests is a transaction completed, was a thing of the past before final hearing of plaintiff's suit, and the land involved had been leased to a third party, the National Gypsum Company, the lease involving negotiations which themselves covered a considerable period of time.
It has been established that the declaratory judgment act may not be invoked unless there is a bona fide dispute between the adversaries to a cause as to a present justiciable question, and judicial declarations as to questions which are moot are precluded. Jurisdiction may be set in motion by the moving party if he has shown himself to be in doubt as to existence or non-existence of some right, status, immunity, power, or privilege and has demonstrated that he is entitled to have that doubt obviated. Ready v. Safeway Rock Company, 1946, 157 Fla. 27, 24 So.2d 808; 9 Fla.Jur., Declaratory Actions, section 9, p. 554. In May v. Holley, Fla. 1952, 59 So.2d 636, 639, the elements essential to maintain the status of a proceeding as being judicial in nature so as to bring it within the constitutional powers of the courts appear in the following excerpt:
"Before any proceeding for declaratory relief should be entertained it should be clearly made to appear that there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent *426 upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity."
In Colby v. Colby, Fla.App. 1960, 120 So.2d 797, the court pointed out that the declaratory act cannot be invoked to obtain the opinion of the court as to a mere colorable dispute. The dispute, continued the court, must be justiciable in the sense that it is based upon some definite and concrete assertions of right, with the contest involving the legal or equitable relations of the parties having adverse interests concerning which the declaration is sought.
This was a completed sale of land which in turn was leased before entry of the final decree by the purchaser to a third party, the National Gypsum Company, which is not a party to this suit. Plaintiff does not seek to set aside the sale; he did not attempt to restrain or halt it, and no lis pendens was filed. Plaintiff, on the contrary, seeks only to have his questions answered and, predicated upon the eventuality of favorable judicial responses to those questions, he asserts that he is entitled to supplemental relief under sections 87.01 and 87.07, Florida Statutes, F.S.A.
Plaintiff's prayer for supplemental relief is not sufficient to vitalize a justiciable controversy here since the declaratory act would become pertinent only upon the finding that a right of plaintiff had been violated.
A judicial declaration regarding the consummated transaction would, under the circumstances, serve no useful purpose. We agree with the chancellor that there is no bona fide justiciable controversy here.
Affirmed.
SHANNON, C.J., and HEWITT, ROBERT S., Associate Judge, concur.